FILED
CLERK, U.S. DISTRICT COURT

FEB 19 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

QED PRODUCTIONS, LLC, et al.,          )     Case No: CV 07-00225 SVW (SSx)
                                       )
               Plaintiffs,             )     ORDER GRANTING-IN-PART
                                       )     PLAINTIFFS' MOTION FOR SUMMARY
        v.                             )     JUDGMENT [30]
                                       )
JAMES NESFIELD, et al.,                )
                                       )
               Defendants.             )
                                       )
                                       )
_____)
                                       )
                                       )

I.   Introduction

        Plaintiffs bring this action alleging copyright infringement and
a variety of underlying state law claims based on the misappropriation
of certain marks and copyrights violated by Defendants.  Though both
parties to this action have filed Motions for Summary Judgment, this
Order issues a narrow ruling that Defendants did not properly revive
Stan Lee Media International Corporation ("SLMI") and were not
properly elected its directors and officers. As such, Defendants have
no legal right to utilize any assets of SLMI.  Plaintiffs' Motion for

1 | Summary Judgment is thus GRANTED-IN-PART. All remaining issues before
2 | the Court in this case remain under submission.

3

4 | **II.   Factual and Legal Background**

5

6 |     A.   <u>Facts</u>

7 |     Plaintiffs consist both of companies and individuals bringing
8 | suit against Defendants for copyright infringement and the violation
9 | of various state laws.  Plaintiff QED Productions, LLC ("QED") is a
10 | wholly owned subsidiary of POW! Entertainment, Inc. ("POW!"). (Comp.,
11 | ¶3.)  Plaintiff Stan Lee is a well known comic book writer and creator
12 | of a number of established comic book heroes, such as Spider-Man, X-
13 | Men, and The Fantastic Four. Mr. Lee was formerly employed by Marvel
14 | Entertainment, Inc., a worldwide publisher of well known comic books.
15 | (Comp., ¶14; Ans., ¶11.)  Plaintiff Gill Champion is allegedly a
16 | shareholder suing in a derivative capacity on behalf of SLMI (Comp,,
17 | at 3.)  Defendants are three known individuals – James Nesfield, A.F.
18 | Galloway, and Douglas C. Cogan – along with 10 Doe Defendants, who now
19 | are attempting to assert control over SLMI. (Comp,. ¶4.)

20 |     The foundation of this dispute dates back to October 13, 1998,
21 | when Plaintiff Stan Lee, in conjunction with his associate Peter Paul,
22 | incorporated a company known at the time as Stan Lee Entertainment
23 | ("SLE").  In April of 1999, SLMI was founded through a reverse merger
24 | and acquired the assets of SLE.  (Comp.,¶15; Ans., ¶12.) The assets
25 | allegedly did not include any Marvel copyrights, but did include the
26 | copyrights of SLE and the future creations of Stan Lee. (Comp., ¶15.)
27 | On August 12, 1999, by reverse merger with a company by the name of

28

1 Boulder Capital Opportunities, SLMI became a Colorado corporation and
2 was publicly traded. (Comp., ¶19; Ans., ¶16.)

3      Plaintiffs allege that on October 5, 1999, as a memorialization
4 of previous agreements, Peter Paul entered into a consulting agreement
5 referred to as the "Paraversal Agreement." Section 3.03 of this
6 agreement allowed for Stan Lee to enter into an agreement with SLE and
7 thereby compete with Marvel. Essentially, the agreement permitted
8 Stan Lee to render his services to both Marvel and SLE in a non-
9 exclusive manner. Plaintiffs allege that the creations Stan Lee made
10 for Marvel during their employment relationship were retained by
11 Marvel. (Comp., ¶18-19.)

12      On February 16, 2001 SLMI filed for Chapter 11 bankruptcy in the
13 United States Bankruptcy Court for the Central District of California.
14 (UF, 16.) In February of 2002, while the bankruptcy proceedings were
15 pending, Stan Lee allegedly acted as a promoter on behalf of a
16 corporation that he anticipated founding, known as Stan Lee Company.
17 During this period of the bankruptcy proceedings, Stan Lee entered
18 into an agreement ("Asset Purchase Agreement") with SLMI, the debtors
19 in possession, to acquire all rights to certain intellectual
20 properties (collectively referred to as "the Properties") on behalf of
21 the Stan Lee Company ("SLC"). (Comp., ¶21; Answer, ¶18.) According to
22 Plaintiffs, the name of the Stan Lee Company was then changed to QED
23 to avoid the taint associated with Stan Lee's name at the time of the
24 proceedings. (Comp., ¶22.) On April 11, 2002, however, the bankruptcy
25 court issued an order approving the agreement for the sale of SLMI
26 properties to SLC. (Comp., ¶21; Ans., ¶18.) Defendants assert that the

27

28

transfer of assets to QED as opposed to SLC was in violation of the order of the bankruptcy court. (Ans., ¶19.)

In November of 2006, while the bankruptcy proceedings were still occurring, Defendants allege they revived and assume control of SLMI in order to, in their view, save SLMI from looting and destruction of its records by Plaintiffs through the alleged improper transfer of assets. (Ans., ¶21.) The details of how this allegedly occurred will be discussed below as part of the Court's legal analysis. Defendants assert they have been properly utilizing SLMI's assets since this time. Plaintiffs assert the process by which Defendants revived and assumed control of SLMI was improper and hence that their use of the assets Plaintiffs assert were properly transferred to QED is a violation of QED's property rights.

B.   Claims

In their complaint, Plaintiffs set forth eight claims for relief. Plaintiffs' First Claim for relief is brought by Plaintiff QED against all Defendants for copyright infringement.  Plaintiff QED alleges that it is assignee and exclusive owner of certain comic book creations and intellectual properties that have been featured on a website run by Defendants and used for Defendants' profit.  Plaintiff QED alleges that the use of these intellectual properties without consent of QED violates QED's copyright in the works. (Comp., ¶38-48.)

Plaintiffs' Second Claim for relief is brought by all Plaintiffs against all Defendants for violation of Section 43(a) of the Lanham Act.  Plaintiffs allege that Defendants are wrongfully appropriating Stan Lee's name and likeness, the Stan Lee trademark, and Stan Lee's signature in a manner that creates confusion of origin and implies the

4

approval by Plaintiffs of Defendants' actions.  Plaintiffs maintain that Defendants wrongfully claim rights to the protected works and through such actions have wrongfully deprived Plaintiffs of their right to receive the goodwill and value that they would otherwise receive. (Comp., ¶49-58.)

Plaintiffs' Third Claim for relief is brought by Stan Lee and Gill Champion (as a derivative action) against Defendant Nesfield and Does 1-10 for Cybersquatting in violation of 15 U.S.C. § 1125(d). Plaintiffs allege that Defendants have wrongfully registered the domain name www.stanleemedia.net in a manner that is likely to cause confusion among the consuming public and will create the impression that Stan Lee or SLMI is affiliated with Nesfield and Does 1-10.  This claim ties into the misappropriation of the Stan Lee name as Plaintiffs argue that Defendants have no right to use the Stan Lee name and this will only lead to confusion among the general consuming public. (Comp., ¶59-68.)

Plaintiffs' Fourth Claim for relief is brought by all plaintiffs against all Defendants for violations of the common law right of publicity.  Again, these rights revolve around the allegedly wrongful use by Defendants of the Stan Lee mark and the copyrights that were allegedly transferred to Plaintiffs through a variety of agreements. By using these marks and copyrights, Plaintiffs maintain, Defendants are engaging in unauthorized use of the rights of publicity that the Plaintiffs own.  Plaintiffs claim that the actions undertaken by Defendants intentionally disregard the rights of Plaintiffs in regard to publicity for these copyrights and marks. (Comp., ¶69-76.)

Plaintiffs' Fifth Claim for relief is brought by POW! and QED against all Defendants for intentional interference with contractual

relations.   Plaintiffs allege that after "acquiring the rights to the Properties from SLMI during the course of the Bankruptcy Case as alleged above, Plaintiff POW! has entered into, and Plaintiffs POW! and QED intend to enter into in the future, contracts with third parties providing for the exploitation of the works that defendants have wrongfully misappropriated and exploited . . . ."  More succinctly, by alleged wrongful use of the marks and the copyrights, Defendants have prevented Plaintiffs from making use of those rights to the fullest extent possible. (Comp., ¶77-82.)

Plaintiffs' Sixth Claim for relief is brought by QED and POW! against all Defendants for intentional interference with prospective economic advantage.  This claim is similar to the Fifth Claim for relief, but alleges violations of Cal. Bus. & Prof. Code § 17200. (Comp., ¶83-89.)

Plaintiffs' Seventh Claim for relief is brought by all Plaintiffs against all Defendants for violations of Cal. Bus. & Prof. Code §§ 17200 et seq.  Plaintiffs allege that by attempting to assert their role as directors of SLMI and by representing to others that they were in charge of the corporation, Defendants engaged in wrongful business practices.  Plaintiffs maintain that Defendants never were duly appointed members of the Board of Directors of SLMI, nor were they officers of the corporation.  Defendants continue, however, to assert on their website that they are the executive officers of SLMI and they continue to file official documents with state governing bodies claiming to be the directors and officers of SLMI. (Comp., ¶90-102.)

Plaintiffs' Eighth Claim for relief is brought by all plaintiffs against all Defendants for declaratory relief.  Plaintiffs seek a judicial declaration that Defendants have not been elected by the

Board of Directors of SLMI or otherwise been lawfully appointed to act as executive officers of SLMI and have no legal right or authority to exercise control over SLMI; that Stan Lee is entitled to work for POW!; that Defendants have not right to challenge or dispute the validity of the bankruptcy court order of April 11, 2002; that Plaintiffs did not commit a fraud on the bankruptcy court; and, finally, that all assets transferred to Plaintiff QED by SLMI pursuant to agreement in the bankruptcy case were legally transferred to QED. (Comp., ¶103-109.)

## III. Analysis of Defendants' Status

Plaintiffs' assert in their Motion for Summary Judgment that Defendants Nesfield, Cogan, and Galloway, as a matter of law, improperly revived SLMI and appointed themselves its officers and directors. (Plaintiff Mot., at 1) They note a number of deficiencies under Colorado law in the process by which Nesfield, Cogan, and Galloway revived and assumed control of SLMI. The Defendants dispute these deficiencies on various grounds, of which the most salient is that exigent circumstances created by Plaintiffs' existed at the time of Defendants' actions. For purposes of this Order, the Court will focus only on the alleged deficient calling of the two special meetings in which Defendants claim they revived the corporation. Because the Court finds the Defendants did not properly revive SLMI on the basis of this deficiency, it need not reach Plaintiffs' other arguments.

Among several other arguments, Plaintiffs assert that Defendants' lacked the authority to call either of the special meetings by which

1  SLMI was allegedly revived. (Plaintiff Mot., at 12.) Under Colorado

2  Revised Statutes Sections 7-107-102 and 7-107-103 a special meeting

3  may be called only by the Board of Directors, by a court order, or by

4  the corporation upon written demand to the corporation "by the holders

5  of shares representing at least ten percent all of the votes entitled

6  to be cast on any issue proposed to be considered at the meeting." The

7  President of SLMI is also vested with the authority to call a meeting

8  under Article II, Section II of SLMI's bylaws. (Ex. 17, Madden Dec. ¶

9  5) Plaintiffs assert that Defendants were neither directors nor

10  officers at the calling of either of the special meetings and never

11  obtained a court order. According to the Colorado Supreme Court, if

12  the call for a meeting was legally improper, then the meeting could

13  not result in a valid election. Grant v. Elder, 64 Colo. 104 (Colo.

14  1917)

15       Analysis of this argument is complicated by Defendants'

16  contradictory or, at minimum, confusing account, of the process by

17  which they allegedly revived SMLI. In particular, it is unclear at

18  what point Defendants claim officers and directors were appointed for

19  SLMI. At one point in the Defendants' Statement of Genuine Issues of

20  Material Fact, Defendants appear to indicate that officers and

21  directors were appointed at the November 15th meeting. (Def. MF, ¶¶

22  31, 37.) However, at another point Defendants contradictorily assert

23  that officers and directors were appointed at the December 7th

24  meeting. (Def. MF, ¶38.) In its Answer, Defendants make no direct

25  reference to a formal special meeting being held on November 15th,

26  merely asserting that "Defendant James Nesfield, after acquiring

27  signed written proxies of a majority of the eligible voting

28  shareholders of SLMI and after obtaining the authority of said

1  majority of shareholders of SLMI" took action on behalf of the

2  shareholders. (Ans., ¶10-11.) The Answer states that officers and

3  directors for SLMI were appointed at the December 7th meeting. (Ans.,

4  ¶16.) Meanwhile, Defendants' Opposition appears to indicate a special

5  meeting was held on both November 15th and December 7th, but leaves

6  unclear at which meeting officers and directors were appointed. (Def.

7  Opp., at 17.) Perhaps in these seemingly contradictory statements

8  Defendants are trying to assert that the officers and directors were

9  somehow provisionally appointed at the November 15th meeting and these

10 appointments were then retroactively ratified at the December 7th

11 meeting. However, this is mere speculation. Whatever the ultimate

12 meaning of Defendants' allegations, they clearly lacked the authority

13 to call either of the two special meetings under the bylaws and

14 Colorado statutes, which Defendants do not deny.

15      Defendants advance two arguments for why the Court should ignore

16 their lack of authority to call the meeting. Defendants first argue

17 that under Article III, Section 2 of the By-Laws of SLMI "[a]ny

18 vacancy on the board of directors may be filled by the affirmative

19 vote of a majority of the shareholders or the board of directors."

20 (Def. Opp., at 19.) Defendants note that this language does not

21 include any notice or meeting requirements so that any deficiencies in

22 their calling of the two special meetings were irrelevant. However,

23 Article II, Section 1 states:

24      The annual meeting of the shareholders shall be held during the

25      month of September of each year on a date and at a time fixed by

26      the board of directors of the corporation  . . . , for the

27      purpose of electing directors and for the transaction of such

28      other business as may come before the meeting. *If the election of*

9

1  *directors is not held on the day fixed as provided herein for any*
2  *annual meeting of the shareholders, or any adjournment thereof,*
3  *the board of directors shall cause the election to be held at a*
4  *special meeting of the shareholders as soon thereafter as it may*
5  *conveniently be held.*

6  (Plaintiff Ex. 17, at 229, emphasis added.) Read together with Article
7  II, Section 1, Article III, Section 2 appears to call for the election
8  of directors in the case of a vacancy by a majority vote of the
9  shareholders *at a special shareholder meeting.* Defendants' reading of
10 Article III, Section 2 would almost completely abrogate Article II,
11 Section 1 and would create a means for the election of directors with
12 absolutely no process specified. This simply does not seem a plausible
13 interpretation of the By-Laws. The more appropriate reading is that
14 Article III, Section 2 supplements rather than displaces Article II,
15 Section 1.

16      Defendants additionally argue that exigent circumstances existed
17 justifying the calling of the two meetings outside normal procedures.
18 Defendants argue that they believed looting of SLMI by QED had
19 occurred and the destruction of corporate records was imminent at the
20 time Defendants called the two meetings at issue. (Def. Opp., at 9.)
21 Defendants also argue that Junko Kobayashi, the authorized
22 representative of SLMI during the bankruptcy proceedings, and David
23 Golubchick, bankruptcy counsel for SLMI, refused to locate the
24 corporate records for Defendants when they requested them on behalf of
25 the shareholders. (Def. Opp., at 10-11.) Finally, Defendants point out
26 that all directors and officers of SLMI had resigned. (Def. Opp., at
27 10.)  In light of these circumstances, Defendants argue, they could
28 not be expected to reach all shareholders with written notice, they

1  could not get a director or officer to call a meeting, and they did

2  not have time to get a court order. (Def. Opp., at 17.) Defendants

3  further argue that Plaintiffs should be estopped from arguing these

4  deficiencies against Defendants because Plaintiffs intentionally

5  created the exigent circumstances leading to the deficiencies. (Def.

6  Opp. at 11.)

7       In further support of this argument, Defendants point to the

8  granting by Colorado Revised Statutes Section 7-103-103 of "emergency

9  powers" to officers to act in the place of the Board of Directors when

10  "a quorum of the directors cannot readily be obtained because of some

11  catastrophic event." Acknowledging that they were not officers at the

12  time the meetings took place, Defendants nonetheless contend that as

13  authorized agents for the shareholders they were logically next in

14  line to exercise emergency powers. (Def. Opp., at 20-21.)

15       Defendants' reliance on exigent circumstances to justify their

16  actions is completely unfounded. Defendants provide no explanation in

17  their briefing and were unable to provide an explanation at hearing as

18  to why, if they truly believed the destruction of corporate records

19  was about to occur, they did not simply seek an emergency order from

20  the bankruptcy court to stop the destruction of the corporate records

21  on behalf of the shareholders in conjunction with filing for a court-

22  ordered meeting, thus allowing time for the meeting to be called. Cf.

23  In re Home Corp., 392 F.3d 1064 (9th Cir. 2004) (affirming the

24  granting of an emergency order by a bankruptcy court). Defendants'

25  chosen method of dealing with the alleged exigent circumstances

26  through holding procedurally deficient meetings and votes which they

27  lacked the authority to call and attempting to assume control of SLMI

28  was more roundabout and convoluted than necessary in the extreme. In

11

no way could the circumstances facing Defendants therefore require the actions they ultimately took or be regarded as a "catastrophic event" under Colorado statutes.

## III. Conclusion

Defendants did not properly revive and assume control of SLMI and hence have no right to the use of any of SLMI's assets. Plaintiff's Motion for Summary Judgment is hence GRANTED-IN-PART. All remaining issues before the Court in this case remain under submission. All parties are ordered to appear before the Court for a status conference on March 10, 2008 at 1:30 PM for discussion of how to proceed in light of this ruling. All parties are order to submit briefs of no greater than ten pages in length by March 3, 2008 detailing their view of how resolution of the litigation should proceed.

IT IS SO ORDERED.

DATED: _Feb 19, 2008_

_____
STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE