1  MCGUIRE WOODS LLP
   LESLIE M. WERLIN #67994
2  1800 Century Park East, 8th Floor
   Los Angeles, California 90067
3  Telephone: (310) 315-8200
   Facsimile: (310) 315-8210
4  LWerlin@mcguirewoods.com

5  SHERMAN & HOWARD, L.L.C.
   Mark W. Williams (appearing *Pro Hac Vice*)
6  Marcy M. Heronimus (appearing *Pro Hac Vice*)
   633 Seventeenth Street, Suite 3000
7  Denver, Colorado  80202
   MWilliams@shermanhoward.com
8  MHeronimus@shermanhoward.com

9  Attorneys for Defendants

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12

13  STAN LEE MEDIA, INC., a Colorado          CASE NO. 07-CV-00225-SVW (SSx)
    corporation,
14                                            [Consolidated with Case No. 07-4438-
                 Plaintiff,                   SVW (SSx) and 09-CV-2340-SVW
15                                            (PJWx)]
          vs.
                                              Assigned to Hon. Stephen V. Wilson
16  STAN LEE, an individual, et al.,          Courtroom 6

17               Defendants.                  **NOTICE OF MOTION AND
                                              DEFENDANTS STAN LEE, QED
18                                            PRODUCTIONS, LLC AND POW!
                                              ENTERTAINMENT, INC.'S
19                                            MOTION TO DISMISS
                                              COMPLAINT; MEMORANDUM
20                                            OF POINTS AND AUTHORITIES
                                              IN SUPPORT THEREOF**

21                                            **Date:  April 25, 2011
22                                            Time:  1:30 p.m.
                                              Ctrm:  6**
23

24

25

26

27

28

NOTICE OF MOTION AND DEFENDANTS MOTION TO DISMISS COMPLAINT AND MEMORANDUM

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE that on April 25, 2011, at 1:30 p.m., in Courtroom 6 of the United States District Court located at 312 North Spring Street, Los Angeles, California 90012, before the Honorable Stephen V. Wilson, United States District Court Judge, Defendants Stan Lee, QED Productions, LLC, and POW! Entertainment, Inc. will move the Court for a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) of the Consolidated Complaint in this case, filed on or about February 14, 2011, and the various claims for relief asserted therein. In the alternative, Defendants move this Court for a stay of this action.  This Motion will be made and based on this Notice, the Memorandum of Points and Authorities, the pleadings and papers filed herein including any reply papers filed by Defendants, on the oral argument at the hearing of this matter, and on such other evidence and argument that the Court may desire to consider.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on February 24, 2011 and March 9, 2011.

DATED:  March 16, 2011.

Respectfully Submitted,

SHERMAN & HOWARD, L.L.C.


By:/s/ Marcy M. Heronimus
Marcy M. Heronimus
Attorney for Defendants

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................1

BACKGROUND AND RELEVANT FACTS......................................................4

ARGUMENT ...................................................................................9

I.  THE CONSOLIDATED COMPLAINT SHOULD BE DISMISSED OR STAYED BASED ON THE DOCTRINE OF *RES JUDICATA*. ....................9

    A.  SLMI's Claims Are Barred by the Doctrine of *Res Judicata*................9

    1.  Identity of Claims.................................................10

    2.  Identity or Privity Between Parties ..........................10

    3.  Final Judgment on the Merits..................................12

    B.  In the Alternative, This Case Should Be Stayed Until the Second Circuit Decides SLMI's Pending Appeal. .........................14

II.  IF THIS COURT CHOOSES NOT TO DISMISS OR STAY THIS ACTIONBASED ON *RES JUDICATA*, ALL OF SLMI's CLAIMS SHOULD STILL BE DISMISSED ON ALTERNATIVE GROUNDS. .......15

    A.  Introduction. ................................................15

    1.  The Claims Are Time-Barred ..................................15

    2.  The Claims Are Too Implausible To Stand .....................16

    B.  Second Cause of Action – Declaratory Relief as to Copyright Ownership and Other Rights.....................................18

    C.  Third Cause of Action -- Breach of Contract.....................21

    D.  Fourth and Fifth Causes of Action -- Breach of Fiduciary Duty ..........21

    E.  Sixth, Seventh, and Ninth Causes of Action – Accounting, Conversion, and Restitution/Unjust Enrichment. ................22

    F.  Eighth Cause of Action (Lanham Act) ............................23

    G.  First Cause of Action – Recovery of Books and Records ..................25

CONCLUSION................................................................25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

**Cases**

Aalmuhammed v. Lee, 202 F.3d 1227  (9th Cir.2000) ............................................20

Aas v. Superior Court,  24 Cal.4th 627 (2000)........................................................22

Amalgamated Sugar Co. v. NL Indus., Inc., 825 F.2d 634 (2d Cir. 1987) .........11, 14

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009) ....................................................16, 21, 22

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ..................................16, 18, 21, 22

Cariajano v. Occidental Petroleum Corp., 626 F.3d 1137 (9th Cir. 2010)................12

Caroselli v. First Interstate Bank of Denver, 15 F.3d 1083 (9th Cir. 1993)..............23

Cedars-Sinai Medical Center v. United Healthcare Ins. Co., No. CV 10-005,
     2010 WL 1875556 (C.D. Cal. May 7, 2010).....................................................16

Church v. Jamison, (2006) 143 Cal.App. 4th 1568 ..................................................19

Collins v. D.R. Horton, Inc., 505 F.3d 874 (9th Cir. 2007) .....................................15

De Haviland v. Warner Bros. Pictures, (1944) 67 Cal.App.2d 225 .........................19

DeCarlo v. Archie Comic Publications, Inc., 127 F. Supp. 2d 497 (S.D.N.Y.),
     aff'd, 11 Fed. Appx. 26 (2d Cir. 2001) ...........................................................20

Dunn v. Castro, 621 F.3d 1196 (9th Cir. 2010)........................................................5

Electro Source, LLC. v. Brandess-Kalt-Aetna Group, Inc., 458 F.3d 931 (9th
     Cir. 2006)..........................................................................................................25

Embarcadero Municipal Improvement Dist. v. County of Santa Barbara, (2001)
     88 Cal.App.4th 781, 793 ...................................................................................23

Gagnon Co. v. Nevada Desert Inn, Inc., (1955) 45 Cal.2d 448 ...............................11

General Bedding Corp. v. Echevarria, 947 F.2d 1395 (9th Cir. 1991) ....................24

Haigler v. Donnelly, (1941) 18 Cal. 2d 764 ............................................................23

Henik v. Labranche, 433 F. Supp. 2d 372 (S.D.N.Y. 2006) ...............................11, 14

In re Westgate-California Corp., 642 F.2d 1174 (9th Cir. 1981) ..............................13

Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829 (9th Cir. 2002) ...........24

Just Water Heaters Inc. v. Affordable Water Heathers & Plumbing, Inc., 2006
　　U.S. Dist. LEXIS 9006 (N.D. Cal. 2006).........................................................23

Justo v. Indymac Bancorp., No. SACV 09-1116, 2010 WL 623715 (C.D. Cal.
　　Feb. 19, 2010)..............................................................................................16

Karl Storz Endoscopy, Inc. v. Surgical Techs., Inc., 285 F.3d 848 (9th Cir. 2002) .24

Landis v. North American Co., 299 U.S. 248 ...............................................14

Miller v. Glen Miller Productions, Inc., 318 F. Supp. 2d 923 (C.D. Cal. 2006).......24

Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708 (9th Cir. 2001) ...............10

Ratner v. Paramount Pictures, Inc., 6 F.R.D. 618 (S.D.N.Y. 1942).........................14

Roley v. New World Pictures, Ltd., 19 F.3d 479 (9th Cir. 1994) .............................20

Santa-Rosa v. Combo Records, 471 F.3d 224 (1st Cir. 2006) .................................20

Scarbourough v. Briggs, (1947) 81 Cal.App.2d 161 ................................................11

SEC v. Paul, 2005 WL 1774054 (C.D.Cal. July 20, 2005).........................................7

Silva v. Sunich, No. CV 03-9327 GPS (CWx), 2006 WL 6116645 (C.D. Cal.
　　Sept. 6, 2006)..............................................................................................21

Solomon v. North American Life, 151 F.3d 1132 (9th Cir. 1998)...........................22

Steen v. John Hancock Ins. Co., 106 F.3d 904 (9th Cir. 1997)................................19

Stewart v. U.S. Bancorp, 297 F.3d 953 (9th Cir. 2002) ....................................10, 13

Tahoe-Sierra, etc. v. Tahoe Reg. Planning, etc., 322 F.3d 1064 (9th Cir. 2003) 10, 13

Tripati v. Henman, 857 F.2d 1366 (9th Cir. 1988)...................................................14

United States v. Paul, 2011 WL 768022 (2d Cir. Mar. 4, 2011)..................................7

Zito v. Steeplechase Films, Inc., 267 F. Supp.2d 1022 (N.D. Cal. 2003)................23

Zuill v. Shanahan, 80 F.3d 1366 (9th Cir. 1996).....................................................20

NOTICE OF MOTION AND DEFENDANTS MOTION TO DISMISS COMPLAINT AND MEMORANDUM

1

## Other Authorities

2

15 U.S.C. § 1125 .......................................................................................24

3

15 U.S.C. § 1127 .......................................................................................25

4

17 U.S.C. § 507(b) ....................................................................................20

5

Cal. Code Civ. Proc. § 337 ........................................................................19

6

Cal. Code Civ. Proc. § 338(c)-(d) .............................................................23

7

Cal. Code Civ. Proc. § 343 ........................................................................22

8

Cal. Labor Code § 2855(a) ........................................................................21

9

10

## Rules

11

Fed. R. Civ. P. 23.1 ...................................................................................12

12

Fed. R. Civ. P. 8 ........................................................................................21

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND DEFENDANTS MOTION TO DISMISS COMPLAINT AND MEMORANDUM

1    Defendants, QED Productions, LLC, POW! Entertainment, Inc. and Stan Lee

2    (collectively, "Defendants"), hereby move to dismiss the Consolidated Complaint of

3    Plaintiff Stan Lee Media, Inc. ("SLMI") or, in the alternative, move to stay

4    proceedings in this action, and in support thereof state as follows:

5                                **PRELIMINARY STATEMENT**

6            Beginning in 2007, SLMI and later a group of shareholders acting in SLMI's

7    name and on its behalf filed suits against Stan Lee ("Lee") and others in the Southern

8    District of New York ("SDNY").  The shareholders who sued derivatively on SLMI's

9    behalf included José Abadin, the current President, a director, and "Chairman of the

10   Special Litigation Committee" of SLMI.  The claims asserted by and on behalf of

11   SLMI included copyright, trademark, breach of fiduciary duty, and related claims

12   involving intellectual property rights, primarily covering various comic-book

13   characters created or co-created by Lee beginning in 1961.  In these cases, the SLMI

14   interests were represented by a series of prominent national law firms such as King &

15   Spalding LLP and Chadbourne & Parke LLP.

16           On March 31, 2010, U.S. District Judge Paul A. Crotty dismissed all the claims

17   asserted on SLMI's behalf, with prejudice and without leave to replead. (Heronimus

18   Declaration ("Decl.") Ex. A)  In his 14-page opinion, Judge Crotty held that every one

19   of SLMI's claims was barred by the applicable statutes of limitations, the doctrines of

20   laches and estoppel, trademark abandonment, statutory provisions of California Labor

21   Law, and other grounds.

22           In addition to dismissing all the claims, Judge Crotty made it clear that he

23   intended for his March 31, 2010 order and judgment to end the protracted litigation

24   between the SLMI interests and Lee.  The plaintiffs before Judge Crotty had sought

25   leave to file a second amended complaint, but Judge Crotty ruled that "allowing [the

26   SLMI shareholder plaintiffs] leave to amend, would work a manifest injustice"

27   because, among other things, "[t]he transaction at issue [was] now more than a decade

28   old."  Judge Crotty held that "[g]iven the pleading history" of litigation in the SDNY

     and elsewhere, "it [was] now time to call a halt" to the litigation.

-1-

NOTICE OF MOTION AND DEFENDANTS MOTION TO DISMISS COMPLAINT AND MEMORANDUM

The derivative plaintiffs filed a notice of appeal from Judge Crotty's decision to the Second Circuit Court of Appeals.  However, they intentionally defaulted on their appeal by failing to file their brief on appeal or appendix, even after the Court of Appeals granted them a *sua sponte* extension of time.  As a result, the Second Circuit dismissed their appeal, rendering Judge Crotty's decision final and unappealable.

In the meantime, seeking to evade Judge Crotty's rejection of all of its claims, SLMI filed a motion to intervene in an unrelated SDNY litigation between Lee and Marvel, which had been filed in 2002 and dismissed with prejudice in 2005.  SLMI's purpose in seeking intervention was to file a new complaint against Lee (and others) asserting substantially the same claims that Judge Crotty had already dismissed.  On February 4, 2011 (10 days after this Court authorized SLMI to file the Consolidated Complaint), U.S. District Judge Robert W. Sweet held in a 37-page opinion that SLMI's proposed claims were barred by *res judicata* in light of Judge Crotty's decision. (Decl. Ex. B)  In his decision, Judge Sweet quoted Judge Crotty's observation that allowing further pleadings on SLMI's behalf "would work a manifest injustice" and that it was "now time to bring this matter to a close."  Most important, Judge Sweet specifically rejected SLMI's contention that it was not bound by Judge Crotty's order and judgment dismissing all of SLMI's claims because that order was made in an action brought derivatively on SLMI's behalf rather than a direct action in SLMI's own name.  On March 1, 2011, SLMI filed a notice of appeal from Judge Sweet's decision.  That appeal is currently pending in the Second Circuit.

Now, SLMI is seeking to relitigate in this Court the same claims rejected by Judge Crotty and by Judge Sweet.  Each of SLMI's claims in this case was (or at a minimum could have been) asserted in the SDNY litigations that Judge Crotty and Judge Sweet dismissed previously.  Ignoring basic principles of *res judicata*, collateral estoppel, and judicial economy, SLMI is seeking to circumvent the dismissal orders of two U.S. District Judges, as well as the appellate process that is the only acceptable means by which a District Court's decision may be challenged.  Judge Crotty's order

dismissing all of these claims is *res judicata*.  Judge Sweet's holding that SLMI is bound by Judge Crotty's decision is *res judicata* twice over.  It is simply outrageous for SLMI to continue to assert claims that have twice been dismissed in detailed, thoughtful written opinions by two federal judges.

Enough is enough.  As Judge Crotty observed, the transaction that supposedly underlies SLMI's claims is more than a decade old.  This is at least the ***fifth*** attempt by the same coterie of SLMI shareholders – led by thrice convicted felon Peter F. Paul, whose federal securities fraud conviction for manipulating the trading in SLMI's stock and 10-year prison term were affirmed last week by the Second Circuit – to bring the same claims against Lee.  *Res judicata* calls for dismissal of each and every claim asserted in the Consolidated Complaint, with prejudice.  If the Court determines that the action should be dismissed for *res judicata*, this will be dispositive and the Court need not reach any other issue.  Alternatively, because SLMI may challenge Judge Sweet's application of *res judicata* to Judge Crotty's decision in its pending appeal to the Second Circuit, the Court may wish to stay proceedings in this action until the Second Circuit rules on SLMI's appeal.

Although Defendants believe that *res judicata* is a sufficient ground for dismissal of the Consolidated Complaint, should the Court wish to go further, there are multiple additional grounds for dismissal.  One overarching ground, applicable to all claims, is the applicable statutes of limitations and the related doctrines of laches and estoppel.  Whether or not Judge Crotty's decision is given full and formal *res judicata* effect (as Defendants submit it should be), his holdings that all of SLMI's claims are time-barred and that there is no basis for tolling the statute of limitations are, at a minimum, highly relevant and persuasive precedent, especially when viewed in light of SLMI's obvious forum shopping.

As discussed in greater detail below, all of SLMI's substantive claims are based on a contract that Lee allegedly entered into with a corporate predecessor of SLMI in 1998.  SLMI contends that through this contract, it acquired, by assignment, two distinct categories of copyrights and trademarks:  1) those covering the famous

characters Lee created as works for hire for Marvel Entertainment, LLC and its predecessors (collectively, "Marvel") and that Marvel has been exploiting for decades (the "Marvel Characters"); and 2) those covering characters Lee created between November 1998 and January 2001, while working for SLMI (the "Lee Characters").

However, it is undisputed that in January 2001, Lee sent SLMI a written notice that he was terminating his contract based on SLMI's multiple breaches of it.  It is also undisputed that between 1998 and the present, Marvel has openly, continuously, and notoriously exploited the Marvel Characters (which were at the center of Marvel's recent acquisition for more than $4 billion dollars) without any challenge from anyone connected with SLMI between 1998 and at least 2006.  For his part, Lee has exploited intellectual property related to the Lee Characters since he terminated his agreement with SLMI in 2001, again openly and notoriously.  As discussed in greater detail below, statutes of limitations bar SLMI's belated attempts to claim ownership of intellectual property rights in the Marvel Characters or the Lee Characters, whether under theories of copyright, trademark, or otherwise.

There are further grounds for dismissal of all the claims.  One is that SLMI's claims make no economic sense and are insufficiently plausible to satisfy the pleading standards for commencing a federal litigation under the Supreme Court's decisions in Twombly and Iqbal.  Still further grounds are set forth in the argument below.

For these reasons and the others discussed below, the Consolidated Complaint should be dismissed in its entirety, with prejudice.

## BACKGROUND AND RELEVANT FACTS[1]

For more than four decades until 1998, Lee was employed full-time by Marvel

---

[1] These facts are drawn from the Consolidated Complaint, documents incorporated by reference and, documents which may be judicially noticed. See Dunn v. Castro, 621 F.3d 1196, 1205 n.6 (9th Cir. 2010).  Other than exhibits to the Consolidated Complaint, all the cited documents are submitted herewith as exhibits to the accompanying Declaration of Marcy Heronimus ("Decl.").

NOTICE OF MOTION AND DEFENDANTS MOTION TO DISMISS COMPLAINT AND MEMORANDUM

and its predecessors. (Cons. Cplt. ¶ 12)  During this period, Lee created or co-created hundreds of iconic comic-book characters, including the Fantastic Four, Spider-Man, Iron Man, Daredevil, The Incredible Hulk and The X-Men (collectively, the "Marvel Characters").  (Cons. Cplt. ¶ 2)  Marvel is the owner of the copyright in all of the Marvel Characters and holds certificates issued by the U.S. Copyright Office evidencing the registration of the comic books in which the Marvel Characters first appeared, including the characters listed in the Consolidated Complaint. (Decl. Ex. C, copyright certificates of registrations for the Marvel Characters)

In 1998 Lee, a California resident, entered into an employment agreement (the "1998 SLE Agreement") with SLE, the newly formed, alleged corporate predecessor of SLMI. (Cons. Cplt. ¶ 4, 15; a copy of what SLMI asserts is that agreement is attached to the Consolidated Complaint as Ex. "1")  The 1998 SLE Agreement explicitly referenced Lee's separate employment agreement with Marvel (the "Marvel Employment Agreement"), and acknowledged Lee's commitment to make himself available to Marvel for 10 to 15 hours per week. (Cons. Cplt. Ex. "1" at 1)  SLE, therefore, was demonstrably aware of the Marvel Employment Agreement and its terms when it signed the 1998 SLE Agreement.

In the 1998 SLE Agreement, Lee also agreed to perform creative services for SLMI.  Subject to certain conditions, Lee also agreed to convey his rights to unspecified intellectual property that he might have created or might subsequently create, including:

> all right, title and interest [he] may have or control, now or in the future, in the following:  Any and all ideas, names, title, characters, symbols, logos, designs, likenesses, visual representations, artwork, stories, plots, scripts, episodes, literary property, and the conceptual universe related thereto, including my name and likeness (the "Property") *which will or have been in whole or part disclosed in writing to, published, merchandised, advertised, and/or licensed  by [SLMI]*. . . .

(Id. at 4 (emphasis added))  The Consolidated Complaint does not contain a single allegation describing any "Property" that Lee may have had or controlled or that was

disclosed, published, merchandised or licensed by SLE, or SLMI, any time at or after the date the 1998 SLE Agreement was executed.[2]

In exchange for Lee's services and the assignment, Lee was to receive a salary from SLMI of $250,000 per year together with life insurance and other benefits.  (Id. at 2-3)  The 1998 SLE Agreement expressly provided – as would have been the case as a matter of law– that Lee's obligation to allow SLMI to utilize his intellectual property would cease if there were a material breach of the Agreement.  (Id. at 4)  The 1998 SLE Agreement is governed and construed under California law.  (Id.)

By a January 30, 2001 letter, Lee notified SLMI that he was terminating the 1998 SLE Agreement based on a series of material breaches by SLMI including failure to pay Lee's salary, failure to secure his insurance, and "failure of the company to protect his name from constant forgery," among others.  (Cons. Cplt. ¶¶ 37, 38; Decl. Ex. E, January 30, 2001 termination letter)  In this letter, Lee also reclaimed all intellectual property he had previously assigned to SLMI.  (Id.)

In February 2001, SLMI filed for bankruptcy.  (Cons. Cplt. ¶ 41)  In August 2002, SLMI was administratively dissolved by the Colorado Secretary of State.  (Decl. Ex. F)  In 2006, the Bankruptcy Court dismissed SLMI's bankruptcy case, without any plan of reorganization having been confirmed.  (Decl. Ex. G).

**SLMI Starts Its Barrage Of Repetitious Lawsuits And Forum Shopping**

On March 15, 2007, more than eight years after Lee entered into the 1998 SLE Agreement, James Nesfield ("Nesfield") and several others acting in SLMI's name – all affiliated with SLMI's co-founder, thrice convicted felon Peter F. Paul, who is currently serving a ten-year federal prison term for manipulating the trading in SLMI

---

[2] SLMI's 10-KSB filed with the SEC on March 20, 2000, similarly makes no mention of any of the valuable intellectual property rights relating to the Marvel Characters that SLMI now claims to own. (Decl. Ex. D, Part I, Item 1)

stock and causing losses in excess of $10 million[3] – sued Marvel in the Southern District of New York asserting that SLMI possessed co-ownership rights to the Marvel Characters.  (Decl. Ex. H).  They were represented by the national law firm of King & Spalding LLP.  (Id.)  On September 11, 2008, Judge Crotty dismissed that suit on procedural grounds.  (Decl. Ex. I).  Meanwhile, on July 9, 2007, Nesfield and others again acting in the name of SLMI sued Lee and QED and POW! in this Court on claims relating to the Lee Characters.  (Case No. 07-4438-SVW (SSx)).

On January 26, 2009, SLMI shareholders José Abadin, Nelson Thall, John Petrovitz, and Christopher Belland filed a derivative action ("*Abadin I*") on SLMI's behalf in the Southern District of New York.  (Decl. Ex. J).  On April 27, 2009, Abadin and Belland filed an eight-count Amended Complaint in that action against Lee, Marvel, and another individual.  The Amended Complaint alleged copyright, trademark (Lanham Act), breach of contract, breach of fiduciary duty, and related claims with respect to the exploitation of the Marvel Characters and the Lee Characters.  (Decl. Ex. K)  The *Abadin I* plaintiffs' counsel included Martin Garbus of Eaton & VanWinkle LLP, and Chadbourne & Parke LLP.  (Decl. Exs. K & L)

On April 3, 2009, for no apparent reason, Abadin filed a duplicative derivative suit ("*Abadin II*") on SLMI's behalf in this Court, asserting the same claims against Lee that were already pending in his SDNY suit.  (Decl. Ex. M)  By order dated September 11, 2009, with Abadin's consent, this Court stayed all proceedings in *Abadin II* pending Judge Crotty's resolution of *Abadin I*.  (Decl. Ex. N)

On March 31, 2010, Judge Crotty granted Rule 12(b)(6) motions by Lee and Marvel to dismiss the Amended Complaint in *Abadin I* in its entirety, without leave to further amend. (Decl. Ex. A)  As discussed above, Judge Crotty dismissed the Amended Complaint based on, *inter alia*, the statutes of limitation, laches, and

---

[3]   See, e.g., United States v. Paul, 2011 WL 768022 (2d Cir. Mar. 4, 2011); SEC v. Paul, 2005 WL 1774054 (C.D.Cal. July 20, 2005).

estoppel.  Judge Crotty also ruled that representatives of SLMI would not be permitted to file another complaint because given the history of the action and related cases, "allowing leave to replead, would work a manifest injustice" (Id. at 7).  Instead, the court stated that "**it [was] now time to call a halt**" and "**to bring this matter to a close.**"  (Id. (emphasis added)).  As also noted above, SLMI's representatives in *Abadin I* intentionally abandoned the appeal they filed in that case, resulting in dismissal of the appeal by the Second Circuit on October 15, 2010.  (Decl. Ex. O)

On September 10, 2010, SLMI requested a pre-motion conference before Judge Crotty on a proposed motion to vacate the judgment dismissing the claims in *Abadin I*.  (Decl. Ex. P)  At a conference held on November 17, 2010, Judge Crotty authorized SLMI to file such a motion but indicated to SLMI that he saw no basis to vacate his judgment, "because nothing you have said convinces me that the interests you represent have not had a full opportunity to litigate this."  (Decl. Ex. Q at 17).  By letter dated November 22, 2010, SLMI notified Judge Crotty that it would not file its proposed motion to vacate after all. (Decl. Ex. R)

Meanwhile, seeking to avoid the preclusive effect of Judge Crotty's dismissal of its claims, in August 2010, SLMI moved to intervene and file a proposed amended complaint in an unrelated action between Lee and Marvel that had been filed in the SDNY in 2002 and that was settled and dismissed with prejudice in 2005, Lee v. Marvel Enterprises, *Inc.*, 02-cv-8945 (RWS) (Decl. Ex. S)  By doing so, SLMI sought, among other things, to avoid Judge Crotty's courtroom and the preclusive effect of *Abadin I* .  Judge Sweet condemned SLMI's tactics in a 37-page opinion dated February 4, 2011, in which he denied SLMI's motion to intervene and to file the proposed amended complaint.  (Decl. Ex. B)  Among other things, Judge Sweet held that as a matter of law, *res judicata* and Judge Crotty's prior decision in *Abadin I* barred the claims SLMI was seeking to assert before him.  (Id., p. 35)  Judge Sweet noted that he reached this conclusion even though *Abadin I* had formally been filed as a derivative suit on SLMI's behalf, rather than in SLMI's own name.  (Id.)  On March

1, 2011, SLMI filed a notice of appeal from Judge Sweet's decision to the Second Circuit.  (Decl. Ex. T)  That appeal is pending.

Meanwhile, on May 27, 2010, the Colorado Court of Appeals held that a three-member board of directors of SLMI had been elected the previous year, consisting of José Abadin, Nelson Thall, and Jeffrey Segal.  (Decl. Ex. U)  On January 5, 2011, SLMI issued a shareholder letter announcing that Abadin had been named the President and Chairman of the Board of SLMI as well as "Chairman of the Special Litigation Committee."  (Decl. Ex. V)  Abadin and Thall were derivative plaintiffs in the *Abadin I* action and, in Abadin's case, the *Abadin II* action.  By initiating those actions, both had assumed a fiduciary duty to represent the interests of SLMI and its shareholders in those actions to the best of their ability.

On February 14, 2011, SLMI filed its Consolidated Complaint in this court which, as shown below, realleges the same claims dismissed by Judge Crotty and Judge Sweet.  On February 15, 2011, this Court entered an administrative order which in substance directed that the Consolidated Complaint supersede all prior pleadings in the three predecessor litigations.  (Decl. Ex. W)  For the reasons set forth below, SLMI's Consolidated Complaint should be dismissed in its entirety.

<u>ARGUMENT</u>

I.   **THE CONSOLIDATED COMPLAINT SHOULD BE DISMISSED OR STAYED BASED ON THE DOCTRINE OF *RES JUDICATA*.**

A.   <u>SLMI's Claims Are Barred by the Doctrine of *Res Judicata*.</u>

Where a plaintiff brings suit on causes of action that are barred by *res judicata*, they should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  <u>See, e.g.,</u> <u>Stewart v. U.S. Bancorp</u>, 297 F.3d 953 (9th Cir. 2002).  *Res judicata*, or claim preclusion, prohibits further litigation on "any claims that were raised *or could have been raised*" in a prior action.  <u>Owens v. Kaiser Found. Health Plan, Inc.</u>, 244 F.3d 708, 713 (9th Cir. 2001) (emphasis added).

1    *Res judicata* applies when there is: "(1) an identity of claims; (2) a final

2    judgment on the merits; and (3) identity or privity between parties." <u>Stewart</u>, 297 F.3d

3    at 956 (internal quotations omitted).  Here, all three elements are satisfied.

4              **1.     Identity of Claims**

5              The gravamen of SLMI's claims in its Consolidated Complaint – that SLMI

6    acquired the rights to the Marvel Characters and the Lee Characters in 1998 and still

7    holds them today – was the gravamen of the claims dismissed in *Abadin I*.  All the

8    allegations and claims contained in the Consolidated Complaint either were asserted

9    in *Abadin I*, or at a minimum, could have been asserted in that case.  The very same

10   claims were also asserted in SLMI's proposed amended intervenor's complaint that

11   Judge Sweet recently rejected as having already been resolved against SLMI *in*

12   *Abadin I*.  For the Court's convenience, submitted herewith as Decl. Ex. X is a chart

13   setting forth the key parties and factual and legal allegations of the three complaints,

14   which amply demonstrates that the substance of SLMI's claims in all three pleadings

15   is the same. <u>See also</u> <u>Tahoe-Sierra, etc. v. Tahoe Reg. Planning, etc.</u>, 322 F.3d 1064,

16   1077-78 (9th Cir. 2003) ("The fact that *res judicata* depends on an 'identity of claims'

17   does not mean that an imaginative attorney may avoid preclusion by attaching a

18   different legal label to an issue that has, or could have been, litigated.")

19             **2.     Identity or Privity Between Parties**

20             The second element of *res judicata*, identity or privity between the parties, is

21   also satisfied.  The claims in all three pleadings are asserted on SLMI's behalf and

22   Lee is the primary target of the claims.  That *Abadin I* was a derivative action brought

23   on SLMI's behalf, as opposed to a direct action by SLMI itself, does not negate the

24   bar of *res judicata*.  As Judge Sweet held, a determination in a shareholder derivative

25   action is *res judicata* in subsequent actions brought by the corporation or other

26   shareholders, including those who were not parties to the prior litigation, so long as

27   the parties' interests were adequately represented in the prior action.  This holding

28   follows the well-settled principle that *res judicata* applies to a corporation and all of

-10-
NOTICE OF MOTION AND DEFENDANTS MOTION TO DISMISS COMPLAINT AND MEMORANDUM

its shareholders in a subsequent action based on the same subject-matter that has already been litigated by the corporation or by shareholders on the corporation's behalf.  See, e.g., Amalgamated Sugar Co. v. NL Indus., Inc., 825 F.2d 634, 640 (2d Cir. 1987); Henik v. Labranche, 433 F. Supp. 2d 372, 380-82 (S.D.N.Y. 2006).  See also Gagnon Co. v. Nevada Desert Inn, Inc., (1955) 45 Cal.2d 448 (corporation was in privity with its shareholders); Scarbourough v. Briggs, (1947) 81 Cal.App.2d 161, 165 (plaintiff in a shareholder derivative action is in privity with the corporation on whose behalf the claim is brought)  Here, Judge Sweet found that SLMI's interests were adequately represented in *Abadin I* and that privity existed. (Decl. Ex. B at 35).  Thus, *Abadin I* is *res judicata* with respect to SLMI's claims here based upon the same agreements, trademarks and copyrights.

SLMI has contended that its interests were "inadequately represented" in *Abadin I* and therefore it should not be bound by the judgment in that case.  For SLMI to make this argument is disingenuous at best given that two of the original named plaintiffs, Abadin and Thall, who assumed fiduciary duties to represent SLMI and its shareholders faithfully and competently by filing *Abadin I* in SLMI's name, now constitute a majority of SLMI's three-member board of directors.  They remain in charge today of representing SLMI's interests in this litigation, with Abadin holding himself out as "Chairman of the Special Litigation Committee."  Moreover, these derivative plaintiffs were represented by eminent counsel throughout.  The existence of privity is further confirmed because Judge Sweet held last month, **in an action in which SLMI itself was the movant**, that "SLMI's interests were adequately represented in *Abadin*."  (Decl. Ex. B at 35)  That holding, which is subject to challenge by SLMI **only** in its appeal to the Second Circuit, itself has *res judicata* and

1  collateral estoppel effect against SLMI and bars relitigation of the same issue of

2  adequate representation before this Court.[4]

### 3. Final Judgment on the Merits.

3      As set forth above, Judge Crotty granted defendants' 12(b)(6) motions to

4  dismiss in *Abadin I* in their entirety and dismissed the Amended Complaint with

5  prejudice. (Decl. Ex. A)  He also denied plaintiffs' motion to further amend, stating

6  that "[g]iven the pleading history" in the numerous actions, "it [was] time to call a

7  halt."  (Id., p. 9)  Judge Crotty then analyzed each of the eight claims before him and

8  dismissed each claim on several grounds, including, but not limited to the statute of

9  limitations, laches, and estoppel. (Id.)  Specifically, Judge Crotty held:

10

11  - **Copyright Claim –** The 1998 SLE Agreement would purportedly remain in

12     effect for the balance of Lee's life.  However, the California Labor Law limits

13     personal service contracts to a duration of 7 years, and thus, Lee's obligations

14     were statutorily terminated no later than 2005.  (Id., p.11)  Additionally, Lee

15     notified SLMI in January 2001 it was in breach of the agreement and any claim

16     against Lee arising from his termination or alleged breach of contract accrued

17     in 2001 and was barred when the four-year California statute of limitations

18     expired in 2005.  Moreover, Lee had been using his own characters since at

19     least 1999.  "Plaintiffs cannot wait a decade to enforce their rights." (Id.)

20  - **Lanham Act Claim –** Judge Crotty held, *inter alia*, that any Lanham Act

21     violation plaintiffs were seeking to allege would have occurred no later than

22     October or November 1998.  The applicable statute of limitations is 6 years.

23     A cause of action accrues when the wrong has been committed; the applicable

24     statute of limitation ran as of November 2004.  (Id., p. 12)

---

[4]      SLMI has suggested it will argue that because Judge Crotty found the *Abadin I* plaintiffs did not satisfy the contemporaneous-ownership "standing" requirement of Fed. R. Civ. P. 23.1, he lacked jurisdiction to reach the other issues. This is false, because a plaintiff's failure to satisfy a statutory requirement for bringing a particular claim, such as the dictates of Rule 23.1, gives rise to a Rule 12(b)(6) dismissal on the merits rather than a dismissal for lack of subject-matter jurisdiction.  See, e.g., Cariajano v. Occidental Petroleum Corp., 626 F.3d 1137, 1149 (9th Cir. 2010).

- **Breach of Contract Claim –** As previously indicated, the maximum term of employment contract under California law is 7 years.  There is "absolutely no doubt that Lee terminated the 1998 SLE Agreement in writing in 2001."  (Id.)  The statute of limitations began running then and has thus expired.  (Id.)
- **Breach of Fiduciary Duty Claim –** Judge Crotty held that this claim, too, was time-barred under the 3-year statute of limitations.  The claim also was impermissibly redundant of other claims in the case, and its allegations were unclear and implausible.  (Id., p. 13)

Finally, Judge Crotty dismissed claims for accounting and constructive trust because these are remedies for wrongs, which could not stand on their own where no wrongs had been validly pleaded.  Independently, they too were time-barred.  (Id., pp. 13-14)

Judge Crotty's Rule 12(b)(6) dismissal of *Abadin I* for failure to state a claim represents a "judgment on the merits" to which *res judicata* applies.  See Stewart v. United States Bancorp, 297 F.3d 953, 957 (9th Cir. 2002).  Dismissals based on statute of limitations are judgments on the merits for *res judicata* purposes. Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 322 F.3d 1064, 1081 (9th Cir. 2003).  The fact that these grounds for dismissal were in addition to other grounds that Judge Crotty found also merited dismissal does not negate their preclusive effect. See, e.g., In re Westgate-California Corp., 642 F.2d 1174, 1176 (9th Cir. 1981).

Finally, any dispute as to the *res judicata* effect of Judge Crotty's decision has now been resolved by Judge Sweet.  (Decl. Ex. B, pp. 34-35)  Specifically, Judge Sweet held that "**[SLMI's] Proposed Amended Complaint Is Barred**", quoted at length from Judge Crotty's opinion dismissing the claims in *Abadin I* and indicating that Judge Crotty was bringing the litigation to an end, and then held:

> Abadin was brought as a derivative case on SLMI's behalf, and most of the grounds upon which Judge Crotty granted Lee and Marvel's motions to dismiss – particularly, the fact that the various claims are all barred by the applicable statutes of limitations and by laches – *would be equally applicable to SLMI's proposed amended complaint here.  A determination on the merits in a shareholder derivative action will be res judicata in subsequent actions brought by the corporation or other shareholders, including those who were*

***not parties to the prior litigation, so long as the parties' interests were adequately represented in the prior action***.  See, e.g., Henik v. LaBranche, 433 F. Supp.2d 372, 380 (S.D.N.Y. 2006) ("A judgment in the stockholders' derivative action is *res judicata* both as to the corporation and as to all of its stockholders, including stockholders who were not parties to the original action in subsequent actions based upon the same subject matter."), quoting Ratner v. Paramount Pictures, Inc., 6 F.R.D. 618, 619 (S.D.N.Y. 1942);  see also Amalgamated Sugar Co., LLC v. NL Indus., Inc., 825 F.2d 634, 640 (2d Cir. 1987) (shareholder suit is *res judicata* upon corporation where interests are "adequately represented"); Ratner, 6 F.R.D. at 619 (same).  ***SLMI's interests were adequately represented in Abadin.***

(Decl. Ex. B, p. 35) (emphasis added)

Finally, SLMI's pending appeal of Judge Sweet's decision does not alter its preclusive effect.  A judgment retains its *res judicata* effect pending decision on any appeal.  See, e.g., Tripati v. Henman, 857 F.2d 1366, 1367 (9th Cir. 1988).  Therefore, all of the claims asserted by SLMI in the Consolidated Complaint are barred by *res judicata* and should be dismissed with prejudice.

### B.    In the Alternative, This Case Should Be Stayed Until the Second Circuit Decides SLMI's Pending Appeal.

The Court may, in its discretion, grant a stay in pending litigation based on its inherent power to control the disposition of the cases on its docket.  See Landis v. North American Co., 299 U.S. 248, 254-55.  Judge Sweet specifically held that Judge Crotty's decision in *Abadin I*  is *res judicata* against SLMI.  Therefore, SLMI should not be allowed to reassert the same claims here.  The sole appropriate forum to challenge Judge Sweet's ruling, should SLMI wish to do so, is the Second Circuit.  Unless and until the Second Circuit reverses Judge Sweet's determination, this entirely duplicative litigation should be stayed (if not dismissed).[5]  Accordingly, if this Court does not dismiss based on *res judicata*, this action should be stayed until the

---

[5]   Staying proceedings now would **not** be inconsistent with the Court's February 2011 ruling vacating a prior stay, because that determination was made before SLMI filed its notice of appeal to the Second Circuit from Judge Sweet's decision.

-14-

hearing and disposition of SLMI's Second Circuit appeal.  See Collins v. D.R. Horton, Inc., 505 F.3d 874, 882-83 (9th Cir. 2007) (where  first action has preclusive effect and is on appeal, court may delay further proceedings in second action pending conclusion of the appeal in first action).

## II.   IF THIS COURT CHOOSES NOT TO DISMISS OR STAY THIS ACTION BASED ON *RES JUDICATA*, ALL OF SLMI'S CLAIMS SHOULD STILL BE DISMISSED ON ALTERNATIVE GROUNDS.

### A.   Introduction.

SLMI's Consolidated Complaint pleads nine (9) causes of action.  With the exception of the First Cause of Action seeking to recover SLMI's books and records, which is addressed separately below, all the causes of action are based on the same underlying factual allegations.  The key allegations are that under the 1998 SLE Agreement, Lee supposedly assigned ownership of copyright and trademark rights in both the Marvel Characters and the Lee Characters to SLMI, but that since 1998, Lee has allowed Marvel to exploit the Marvel Characters, and Defendants have exploited the Lee Characters and related intellectual property.  However, as the Complaint acknowledges, Lee notified SLMI in January 2001 that he was terminating the 1998 SLE Agreement based on SLMI's multiple breaches of that agreement.

### 1.   The Claims Are Time-Barred

Consistent with Judge Crotty's rulings in *Abadin I*, the statutes of limitations on all of SLMI's claims began to run in January 2001.  They all expired long before SLMI filed its Consolidated Complaint in February 2011 (more than a decade later) and even before SLMI filed any predecessor litigation.  Equally, the claims all are barred by laches and estoppel.

SLMI's Consolidated Complaint itself alleges that Lee and others, including QED and POW! have used and exploited the characters at issue (including the Marvel Characters and the Lee Characters) for their own benefit since at least since 1998.  (Cons. Cplt. ¶¶ 3, 31-35, 102)  Specifically, the Consolidated Complaint alleges that "[a]fter the 1998 Assignment, Lee, and others, including Defendants

1   POW! Entertainment, Inc., and QED Productions, LLC, knowing of SLMI's
2   intellectual property ownership rights  and without authority from SLMI, colluded to
3   copy,  license, transfer, exploit and collect monies from the exploitation of the Lee
4   Characters [defined to include the Marvel Characters] and the other rights assigned to
5   SLMI in the 1998 Assignment."  (Cons. Cplt. ¶ 3 (emphasis added))  Yet, SLMI
6   waited for a decade before raising any objection to Defendants and others doing so.
7   That is too long.  The specific statute of limitations on each individual cause of
8   action asserted in the Consolidated Complaint is discussed below.

9                    **2.      The Claims Are Too Implausible To Stand**

10       Another overarching reason that SLMI's claims should be dismissed is that the
11   allegations of the Consolidated Complaint are implausible and tell a story that makes
12   no economic sense.  Under current federal pleading standards set forth by the
13   Supreme Court, a complaint must contain sufficient factual matter to "state a claim to
14   relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570
15   (2007); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Courts in this
16   district have on numerous occasions dismissed claims that failed to meet the
17   plausibility standard.   See, e.g., Cedars-Sinai Medical Center v. United Healthcare
18   Ins. Co., No. CV 10-005, 2010 WL 1875556 (C.D. Cal. May 7, 2010);  Justo v.
19   Indymac Bancorp., No. SACV 09-1116, 2010 WL 623715 (C.D. Cal. Feb. 19, 2010).
20       Here, SLMI's allegation that SLMI obtained ownership of the Marvel
21   Characters by assignment from Lee under the 1998 SLE Agreement does not meet
22   the required minimum standard of plausibility.  The Consolidated Complaint alleges
23   that since the fall of 1998, SLMI has been the owner of the copyrights and
24   trademarks associated with iconic Marvel Characters created or co-created by Lee
25   such as Spider-Man, the Fantastic Four, Captain America, Iron Man, Daredevil, the
26   Hulk, and the X-Men.  Yet in 1999, soon after SLMI was formed, it began making
27   SEC filings trumpeting that SLMI would benefit from Lee's valuable talents and
28   services. (Decl. Ex. Y at 3, 8-9; Decl. Ex. Z at 5)  These SEC filings emphasized that

1   Lee had assigned to SLMI the right to use three slogans and trademarks.  (Decl. Ex.

2   Y at 3-4)  Conspicuously missing from any of SLMI's SEC filings, however, is any

3   suggestion that SLMI owned or had any right to exploit any Marvel Characters –

4   even though Lee is prominently described as having co-created all of these characters

5   on **the very same page** of the same filing that defines SLMI's business.  (Id. at 3)

6   Rather, the SEC filings describe SLMI as "a newly established, Internet based,

7   multimedia company founded by comic book icon Stan Lee to produce **original**

8   branded characters and content for exploitation in all media."  (Id. (emphasis added))

9   At no time between 1998 and 2001 did SLMI exploit or seek to exploit any of the

10  Marvel Characters or seek to prevent Marvel from exploiting any of the Marvel

11  Characters, nor did anyone connected with SLMI claim (until at least 2006) that

12  SLMI had any right to do these things.

13         The Consolidated Complaint fails to explain plausibly why if SLMI held these

14  valuable rights beginning in 1998, no one connected with SLMI ever sought to

15  exploit these rights or profit from Marvel's open and notorious exploitation of them.[6]

16  If SLMI believed it owned the rights to the Marvel Characters as a result of the

17  posited assignment from Lee, then plainly those rights would have been by far

18  SLMI's most valuable assets and at the forefront of its activities.  Instead, SLMI

19  never claimed to own any rights associated with any of the Marvel Characters during

20  the period in which Lee was associated with SLMI, or for years afterwards.  It is, to

21  say the least, "implausible" that SLMI would have described Lee's role in co-

22  creating these prominent and extraordinarily successful Marvel Characters such as

23  Spider-Man and the X-Men as background information while utterly failing to

24  mention that it owned rights to these characters and had plans to exploit them.

25  _____

26         [6] During the 1999-2007 time period, Marvel or its licensees released, among
    others, three Spider-Man movies, three X-Men movies, two Fantastic Four movies, an
27  Incredible Hulk movie, and a Daredevil movie.

28

1  Pleadings rising to this level of economic implausibility should be dismissed.

2  Twombly, 550 U.S. 544 (2007).

3  Based on the statute of limitations, the applicable pleading standards, and other

4  grounds discussed below, each of the nine causes of action should be dismissed.

5  **B.    Second Cause of Action – Declaratory Relief as to Copyright**

6  **Ownership and Other Rights.**

7  The Second Cause of Action, pleaded against all Defendants, is captioned

8  "Declaratory Judgment Relief."   (Cons. Cplt. ¶¶ 61-71)   This claim seeks a

9  declaration of rights based on the 1998 SLE Agreement, in which Lee purportedly

10  agreed to perform services for SLMI's predecessor and assigned it certain rights for a

11  term that would last the rest of Lee's life.   The agreement was entered in to in

12  California by Lee, a California resident, and is expressly subject to California law.

13  (Cons. Cplt. Ex "1".)   Lee commenced his services under the agreement in October

14  1998.  (Cons. Cplt. ¶28)

15  California Labor Code § 2855(a) provides:

16  [A] contract to render personal service . . . *may not be enforced against*

17  *the employee beyond seven years from the commencement of service*
   *under it*. Any contract, otherwise valid, to perform or render service of a

18  special, unique, unusual, extraordinary, or intellectual character, which
   gives it peculiar value and the loss of which can not be reasonably or

19  adequately compensated in damages in an action at law, may nevertheless
   be enforced against the person contracting to render the service, for a

20  term not to exceed seven years from the commencement of service under

21  it (emphasis added).

22  Judge Crotty determined that the 1998 SLE Agreement is subject to this seven-year

23  statutory term limitation, that "Lee's obligations were statutorily terminated in 2005"

24  and that "[t]here can be no attempt to enforce that contract beyond the statutory term"

25  (Decl. Ex. A, p. 11).  SLMI is collaterally estopped to revisit that issue with this Court.

26  See Steen v. John Hancock Ins. Co., 106 F.3d 904, 910 (9th Cir. 1997) (collateral

27  estoppel bars the relitigation of fact and law issues adjudicated in previous litigation

28  between parties and those in privity).  In any event, even apart from Judge Crotty's

1  decision, that conclusion follows from the statute, which represents an important

2  public policy in California.  See, e.g., De Haviland v. Warner Bros. Pictures, (1944) 67

3  Cal.App.2d 225, 232-33  .  As a result, even if Lee had not terminated it in 2001, the

4  1998 SLE Agreement expired by operation of law by October 2005 and cannot be

5  enforced now through SLMI's declaratory judgment claim or in any other manner.

6  SLMI's efforts to enforce the 1998 SLE Agreement against Lee also fail under

7  the statute of limitations.  An agreement that Lee terminated in 2001 cannot form the

8  basis for claims in this action commenced against him a decade later.  If SLMI seeks

9  belatedly to challenge Lee's termination of the agreement, its claim is barred by

10  California's four-year statute of limitations for breach of contract.  See Cal. Code Civ.

11  Proc. § 337.  In contract cases, the cause of action accrues and the statute of limitations

12  begins to run at the time of breach.  Church v. Jamison, (2006) 143 Cal.App.4th 1568,

13  1582.  For similar reasons, Count II is also barred by laches and estoppel.

14  Alternatively, Count II is directly barred by the statute of limitations on federal

15  copyright ownership claims under Section 507(b) of the Copyright Act of 1976.  That

16  section provides that "[n]o civil action shall be maintained under [the Copyright Act]

17  unless it is commenced within three years after the claim accrued."  17 U.S.C. §

18  507(b).  A claim for copyright ownership is barred three years from a "plain and

19  express repudiation" of the copyright ownership claim of another.  Aalmuhammed v.

20  Lee, 202 F.3d 1227, 1231 (9th Cir. 2000); Zuill v. Shanahan, 80 F.3d 1366 (9th Cir.

21  1996).  "A cause of action  for [copyright ownership] accrues when one has

22  knowledge of a violation or is chargeable with such knowledge." Roley v. New World

23  Pictures, Ltd., 19 F.3d 479, 481 (9th Cir. 1994).  Where a claimant is aware that a

24  competing claimant is exploiting the copyright but takes no action, the three-year

25  statute begins to run at that time.  DeCarlo v. Archie Comic Publications, Inc., 127 F.

26  Supp. 2d 497, 507 (S.D.N.Y.), aff'd, 11 Fed. Appx. 26 (2d Cir. 2001).  As the Ninth

27  Circuit has explained, "[i]t is inequitable to allow the putative co-owner to lie in the

28  weeds for years after his claim has been repudiated, while large amounts of money are

NOTICE OF MOTION AND DEFENDANTS MOTION TO DISMISS COMPLAINT AND MEMORANDUM

1  spent developing a market for the copyrighted material, and then pounce on the prize

2  after it has been brought in by another's effort." Zuill, 80 F.3d at 1371.

3       In addition, SLMI is time-barred from seeking to establish that Lee had any

4  rights to the Marvel Characters in 1998 that he could possibly have assigned under the

5  1998 SLE Agreement.  In order to colorably allege that SLMI had any copyright

6  interest in the Marvel Characters, SLMI must first allege that Lee held an ownership

7  interest in those characters that was his to assign.  These copyrights were registered by

8  Marvel, not by Lee, beginning in the 1960s.  Lee could not assign what, as a matter of

9  public record, he did not own.  Even if Lee had wanted to challenge Marvel's

10  ownership of the characters, which he did not, any such challenge would have been

11  time-barred.  Zuill, 80 F.3d at 1370 (observing that the passage of time "creates

12  'something like adverse possession to copyright ownership.'"); see also; Santa-Rosa v.

13  Combo Records, 471 F.3d 224, 228 (1st Cir. 2006).

14       Moreover, even if the statute of limitations on any copyright ownership claim by

15  Lee had not expired before 1998, SLMI's independent claim of a copyright ownership

16  interest in the Marvel Characters would have expired three years later in 2001. See

17  Zuill, 80 F.3d at 1370.  There is no allegation that after 1998, SLMI ever objected to

18  Marvel's ownership interest or claimed its own ownership interest in the Marvel

19  characters until the first lawsuit was filed in 2007.  On the other hand, Marvel

20  continued to exploit the Marvel Characters after 1998 and openly asserted its

21  ownership interest.  SLMI does not allege that it made any effort to investigate the

22  merits of Marvel's ownership claim at the time it claims it acquired its ownership

23  interest, and SLMI does not claim that it ever notified Marvel of its claim to ownership

24  of the Marvel Characters.  On that basis, SLMI's independent claim to a copyright

25  interest in the Marvel Characters, which clearly is just a *post hoc* fabrication, is time-

26  barred for yet this additional reason.  See Silva v. Sunich, No. CV 03-9327 GPS

27  (CWx), 2006 WL 6116645 (C.D. Cal. Sept. 6, 2006).

28

1

**C.      Third Cause of Action -- Breach of Contract**

2      The Third Cause of Action (Cons. Cplt. ¶¶ 72-79) asserts that Lee breached the

3   1998 SLE Agreement.  This claim should be dismissed because the 1998 SLE

4   Agreement is no longer enforceable by SLMI, under the durational limit of Cal.

5   Labor Code § 2855(a), and additionally because Lee validly terminated that

6   agreement in 2001. (See supra pp. 18-19)  The claim should also be dismissed as

7   barred by the statute of limitations governing contracts and under the doctrines of

8   laches and estoppel.  (See supra pp. 19) As Judge Crotty held, "there is absolutely no

9   doubt that Lee terminated the [1998 SLE Agreement] in writing in 2001.  The statute

10  of limitations began running at that time.  It has now expired." (Decl. Ex. A, p. 12)

11      Finally, the Third Cause of Action, like all the others, is not validly pleaded

12  under Fed. R. Civ. P. 8 as construed in Twombly and Iqbal because it contains

13  allegations that SLMI owned the Marvel Characters for years but never claimed such

14  ownership or made any effort to exploit such characters – allegations that make no

15  economic sense.  (See supra pp. 16-18)

16

**D.      Fourth and Fifth Causes of Action -- Breach of Fiduciary Duty**

17      In the Fourth Cause of Action, SLMI alleges that Lee breached his fiduciary

18  duty to SLMI by entering into the Marvel Employment Agreement in November

19  1998, by working for other companies such as co-defendants QED and POW! (which

20  began in 2002), and by asserting that his January 2001 letter terminated the 1998 SLE

21  Agreement. (Cons. Cplt. ¶¶ 73-78)  In Count V, SLMI again alleges a breach of

22  fiduciary duty claim against Lee as well as QED and POW!.  (Cons. Cplt. ¶¶ 87-91)

23  These claims are duplicative of SLMI's other, insufficient claims.  For example,

24  paragraph 83 alleges that Lee breached his fiduciary duty to SLMI by not allowing

25  SLMI to compete against Marvel in the use of the assets that Lee had purported to

26  assign to Marvel.  Similarly, paragraphs 89 and 90 of Count V assert that Lee

27  breached his fiduciary duty by causing SLMI's Property and Rights to be diverted to

28  QED and POW!  These claims are just a repackaging of SLMI's Copyright Act,

1  Lanham Act, and breach of contract claims discussed above and below, and should

2  be dismissed for the same reasons.  California law does not allow a breach of

3  fiduciary duty claim that is merely duplicative of, and based on the same facts as, a

4  breach of contract claim.  See Aas v. Superior Court,  (2000) 24 Cal.4th 627, 643.

5       Counts IV and V should also be dismissed as time-barred under California's

6  four-year statute of limitations for fiduciary duty claims.  Cal. Code Civ. Proc. § 343;

7  Solomon v. North American Life, 151 F.3d 1132, 1137-38 (9th Cir. 1998).  As

8  discussed above, SLMI's claims accrued in 1998 and certainly no later than 2001,

9  when Lee notified SLMI that he was terminating the 1998 SLE Agreement, or 2002

10 when Lee began working for QED and POW!  Moreover, while SLMI contends that

11 Lee breached fiduciary duties owed after January 2001, no plausible explanation

12 consistent with Twombly and Iqbal is provided for such contention.  The contention

13 that SLMI relied on Lee for any purpose during its bankruptcy case is, as Judge

14 Crotty noted, implausible and unreasonable because Lee terminated his Employment

15 Agreement with SLMI in January 2001, before the bankruptcy was filed, and did not

16 render services to SLMI after that date.  (Decl. Ex. A, p. 13)

17  **E.  Sixth, Seventh, and Ninth Causes of Action – Accounting,**

18      **Conversion, and Restitution/Unjust Enrichment.**

19      The Sixth Cause of Action is for an accounting (Cons. Cplt ¶¶ 94-98), the

20 Seventh is for conversion (Cons. Cplt ¶¶ 100-106), and the Ninth is for restitution

21 based on unjust enrichment.  The accounting and restitution claims should be

22 dismissed for the same reasons identified by Judge Crotty, who held that "causes of

23 action" such as accounting or constructive trust constitute remedies for an underlying

24 wrong, not a wrong in themselves.  Moreover, these claims are barred by the same

25 statutes of limitations as bar SLMI's substantive claims that underlie them.  See

26 Embarcadero Municipal Improvement Dist. v. County of Santa Barbara, (2001) 88

27 Cal.App.4th 781, 793 (claims for constructive trust and accounting are subject to the

28 limitations period of the underlying substantive right).  As for the conversion claim,

the statute of limitations is three years, which has also run. Cal. Code Civ. Proc. § 338(c)-(d); Caroselli v. First Interstate Bank of Denver, 15 F.3d 1083 (9th Cir. 1993). Additionally, the conversion claim is impermissibly duplicative of SLMI's other claims.  Moreover, both the conversion and unjust enrichment claims are preempted by the Copyright Act.  Zito v. Steeplechase Films, Inc., 267 F. Supp.2d 1022, 1027 (N.D. Cal. 2003) (conversion claim arising from the unauthorized use of a copyrighted work is preempted by Copyright Act);  Just Water Heaters Inc. v. Affordable Water Heathers & Plumbing, Inc., 2006 U.S. Dist. LEXIS 9006, 9011-12 (N.D. Cal. 2006) (claim for unjust enrichment preempted by Copyright Act).[7]

**F.**    **Eighth Cause of Action (Lanham Act)**

Count VIII of the Consolidated Complaint asserts that Defendants violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125.  (Cons. Cplt. ¶¶ 105-121)  This claim, too, should be dismissed for multiple reasons.

First, as with all of SLMI's other substantive claims, the statute of limitations on the trademark (Lanham Act) claim has expired.  For a Lanham Act claim brought in California federal district court, California law provides the appropriate statute of limitations, while federal law governs when the claim accrues.  See Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 836 (9th Cir. 2002).  Although it is unclear whether the statute of limitations on Lanham Act claims in California is three years (Karl Storz Endoscopy, Inc. v. Surgical Techs., Inc., 285 F.3d 848, 857 (9th Cir. 2002)) or four years (Miller v. Glen Miller Productions, Inc., 318 F. Supp. 2d 923, 942 n.11 (C.D. Cal. 2006)), SLMI's claim is time-barred either way.

---

[7] The conversion claim also alleges conversion only of generalized sums of money, in violation of the rule in California that money cannot be the subject of a conversion claim unless a specific sum of money held for the benefit of another is alleged. See generally Haigler v. Donnelly, (1941) 18 Cal. 2d 764.

1    The limitations period begins to run upon SLMI's actual or constructive

2    knowledge of the wrong. <u>Karl Storz Endoscopy, Inc.</u>, 285 F.3d at 857; <u>General</u>

3    <u>Bedding Corp. v. Echevarria</u>, 947 F.2d 1395, 1297 (9th Cir. 1991).  Here, the

4    Consolidated Complaint alleges that since 1998 Defendants "have and continue to

5    use and license trademarks that are part of the Property and the Rights" allegedly

6    owned by SLMI, including all of the Marvel Characters and the Lee Characters.

7    (Cons. Cplt. ¶¶ 3, 27, 28, 110.)  By virtue of the public nature of the marketing and

8    exploitation of these world-famous marks, SLMI cannot reasonably deny that it was

9    aware that Lee was acquiescing in Marvel's use of its marks in 1998.  Similarly, with

10   respect to the Lee Characters and related intellectual property, the statute of

11   limitations started to run no later than January 2001, when Lee openly declared the

12   1998 SLE Agreement at an end and began exploiting his property through other

13   companies, including co-defendants POW! and QED.

14       Second, insofar as SLMI is asserting a Lanham Act claim pertaining to any

15   Marvel trademark, the conclusory allegations in the Consolidated Complaint are

16   insufficiently plausible to withstand a motion to dismiss.

17       Third, even if SLMI acquired rights to any trademarks under the 1998 SLE

18   Agreement and retained them after Lee terminated that agreement in 2001, the

19   Consolidated Complaint pleads no facts from which it could be inferred that Lee ever

20   acquired an interest in any Marvel trademark capable of being conveyed to SLMI in

21   1998 or that SLMI ever used a Marvel trademark in commerce or otherwise.  Thus,

22   SLMI's Lanham Act claims pertaining to any Marvel trademarks must be dismissed.

23   SLMI's Lanham Act claims pertaining to trademarks or used by Lee fare no better.

24       Non-use of a trademark for three consecutive years is prima facie evidence of

25   abandonment.  <u>See</u> 15 U.S.C. § 1127; <u>Electro Source, LLC. v. Brandess-Kalt-Aetna</u>

26   <u>Group, Inc.</u>, 458 F.3d 931, 936 (9th Cir. 2006).  Assuming *arguendo* that SLMI

27   acquired any trademark (the Consolidated Complaint cites "STAN LEE PRESENTS"

28   as an example) in 1998, the Consolidated Complaint fails to allege any use by SLMI

thereafter of that mark or any other mark acquired from Lee.  This is prima facie evidence of abandonment.  Because SLMI cannot rebut the presumption of abandonment as to any and all trademarks that could be the subject of its Lanham Act claim, this claim should be dismissed.

### G.   <u>First Cause of Action – Recovery of Books and Records</u>

Finally, SLMI's First Cause of Action seeks an order directing Defendants to turn over and deliver to SLMI all of SLMI's books, records, files and other documents in Defendants' possession, custody and control.  (Cons. Cplt. ¶ 60).  However, as Defendants' counsel advised SLMI several weeks ago, Defendants' counsel maintains possession of a substantial quantity of SLMI's documents pursuant to a 2008 order entered by a Colorado court (SLMI's state of incorporation), in court proceedings in which those currently in control of SLMI actively participated. (Decl. Ex. AA).  The appropriate procedure through which SLMI may seek possession of these files is to seek modification of that order from the Colorado court, not this Court.  SLMI's assertion of this claim is another instance in which SLMI has improperly disregarded a ruling by a court of coordinate jurisdiction.  Under principles of comity and federalism, this Court should dismiss the First Cause of Action.

### <u>CONCLUSION</u>

The consolidated complaint should be dismissed in its entirety with prejudice or, in the alternative, all proceedings in this action should be stayed pending disposition of SLMI's pending appeal in the Second Circuit.

DATED:  March 16, 2011

Respectfully Submitted,

By:/s/ Marcy M. Heronimus
SHERMAN & HOWARD, L.L.C.
Marcy M. Heronimus
Attorney for Defendants

NOTICE OF MOTION AND DEFENDANTS MOTION TO DISMISS COMPLAINT AND MEMORANDUM

1

## CERTIFICATE OF SERVICE

2

3

    I hereby certify that on this 16th day of March, 2011, a true and correct copy of the foregoing DEFENDANTS' NOTICE OF MOTION TO DISMISS AND MOTION TO DISMISS was served via e-mail and U.S. Mail to the following:

4

5

Jack Cairl, Esq.
Law Offices of Jack G. Cairl
10250 Constellation Boulevard, Suite 2900
Los Angeles, CA 90067
cairl@ikplaw.com

6

7

Raymond Dowd, Esq.
Luke McGrath, Esq.
Dunningham, Bartholow & Miller LLP
1359 Broadway
New York, NY 10018
rdowd@dunnington.com
lmcgrath@dunnington.com

8

9

David A. Pash, Esq.
David A. Pash Law Offices
1880 Century Park East, Suite 1511
Los Angeles, CA 90013
dap@dpashlaw.com

10

11

12

13

Judith M. Sasaki, Esq.
Simke Chodos and Sasaki
1880 Century Park East, Suite 1511
Los Angeles, CA 90013
jms@scsattys.com

14

15

16

17

Peter F. Paul, 78802-012
FCI LA TUNA
Federal Correctional Institution
P.O. Box 3000
Anthony, TX 88021

18

19

20

21

Robert E. Kohn, Esq.
Enenstein & Ribakoff, APC
233 Wilshire Boulevard, Suite 900
Santa Monica, CA 90401
rkohn@enensteinlaw.com

22

23

24

25

By:/s/ Marcy M. Heronimus
SHERMAN & HOWARD, L.L.C.
Marcy M. Heronimus
Attorney for Defendants

26

27

28