ROBERT E. KOHN, SBN 200373
Email: rkohn@kohnlawgroup.com
KOHN LAW GROUP, INC.
1901 Avenue of the Stars, Suite 1900
Los Angeles, CA 90067
Phone: (310) 461-1520
Fax:   (310) 461-1304

LUKE A. McGRATH, *pro hac vice*
Email: lmcgrath@dunnington.com
DUNNINGTON, BARTHOLOW &
MILLER, LLP
1359 Broadway, Sixth Floor
New York, NY 10018
Phone: (212) 682-8811
Fax:   (212) 661-7769

Counsel for STAN LEE MEDIA, INC., a Colorado corporation

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STAN LEE MEDIA, INC., a Colorado corporation,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>STAN LEE, an individual, et al.,<br><br>　　　　　Defendants. | CASE NO. 07-CV-0225-SVW (SSx)<br><br>[Consolidated with Case Nos. 07-4438-SVW (SSx) and 09-CV-2340-SVW (PJWx)]<br><br>Assigned to Hon. Stephen V. Wilson Courtroom 6<br><br>**SLMI'S STATUS REPORT**<br><br>Date: April 16, 2012<br>Time: 1:30 p.m.<br>Place: Courtroom 6<br><br>Hon. STEPHEN V. WILSON |

Pursuant to this Court's Order dated March 28, 2012, DE# 191, re-aligned Plaintiff, Stan Lee Media, Inc. ("SLMI"), provides the Court with the following status report:

## I. PRELIMINARY STATEMENT

Pursuant to this Court's Orders on January 24, 2011 and February 14, 2011, SLMI was re-aligned as the Plaintiff in a consolidated ownership rights litigation commenced by the re-aligned Defendants on January 8, 2007. DE# 150, 152. SLMI appeared for the first time in this action on December 6, 2010 after the SLMI Board of Directors was reconstituted through corporate governance proceedings that took place from 2007-2011 in Colorado (the "Colorado Proceedings"). On January 20, 2009, this Court recognized that SLMI did not have a duly authorized representative to speak on its behalf pending the Colorado Proceedings and, accordingly, stayed the issues of "Plaintiffs' [Stan Lee's] alternative theory of ownership" until such time as the Colorado Proceedings resulted in a representative being duly authorized to speak on behalf of SLMI. DE# 130.

After SLMI appeared and this Court re-aligned SLMI as plaintiff, Defendants sought to dismiss SLMI's Consolidated Complaint ("the SLMI Complaint"). *See* Notice Of Motion And Motion To Dismiss Complaint Filed By Defendants, DE# 158. The Court again stayed this action in order to await resolution of an appeal to the United States Court of Appeals for the Second Circuit (the "Second Circuit"). DE# 182. In staying the matter, the Court stated "should the Second Circuit affirm Marvel on *res judicata* grounds, this Court may be estopped from relitigating that issue. Should the Second Circuit reverse Marvel or affirm it without addressing the *res judicata* determination, Judge Sweet's opinion will have no collateral esttopel effect." That issue was resolved in SLMI's favor when the Second Circuit affirmed the appealed from decision without reaching *res judicata* – the result of which is that SLMI's ownership rights can be adjudicated on the merits, for the first time, in this action.

Now, SLMI seeks to pursue the claims asserted in the SLMI Complaint filed pursuant to this Court's order, dated February 14, 2011, DE# 152. *See* Order dated January 24, 2011 (authorizing filing of complaint and consolidating actions), DE#150.

Specifically, SLMI seeks to vindicate its intellectual property ownership rights, to recover its property, and to recover the monies and royalties diverted from its treasury during the period SLMI was adversely dominated by and/or under the control of Stan Lee ("Lee"), and/or without a duly authorized representative.

## II.   SHORT STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

### A.   Factual Background

In October 1998, Lee co-founded SLMI's predecessor in interest (together, with SLMI, referred to herein as "SLMI"). (SLMI Complaint ¶ 11).  In July 1998, when Marvel rejected Lee's 1994 employment contract in Marvel's bankruptcy, Lee regained his rights in characters such as Spider-Man, The Incredible Hulk, The X-Men, Iron Man, The Fantastic Four, Thor, Daredevil, and many others (the "Lee Characters"). (*Id.* ¶¶ 2, 12-13). In October 1998, Lee executed a written assignment of all of his intellectual property and rights to SLMI in the "October 1998 Agreement." (*Id.* ¶¶ 15-16, 35). In exchange for his intellectual property, Lee became SLMI's Chairman and received managerial and shareholder control of SLMI. (*Id.* ¶¶ 19-21). One month after executing the October 1998 Agreement, and unbeknownst to SLMI, Lee executed an agreement with Marvel in late November 1998 that purported to effect a conditional assignment of certain intellectual property to Marvel. (*Id.* ¶ 31 ). Of course, given Lee's previous assignment of all his intellectual property and rights to SLMI, this conditional assignment to Marvel could not have legally assigned ownership of the Lee Characters that Lee had previously assigned to SLMI. *See* November Agreement, Ex. 2 to PRJN at 21, DE# 163.

In January 2001, on the eve of SLMI's bankruptcy, Lee's and SLMI's attorney, Arthur M. Lieberman, sent a letter to SLMI's chief executive officer on behalf of Lee that alleged a breach of contract, but which contains language that actually waived Lee's rights, if any, to rescind his assignment of his intellectual property to SLMI in October 1998. (*Id.* ¶¶ 37-39).

From October 1998 through May 2010, (before, during and after SLMI's

- 2 -
**SLMI'S STATUS REPORT**

bankruptcy), Lee dominated and controlled the Company. (*Id.* ¶¶ 45-46, 54, 58, 83, 88). During SLMI's Bankruptcy, in March 2002, Lee caused SLMI to "appoint" SLMI's Controller, Junko Kobayashi ("Kobayashi"), as SLMI's authorized agent to make decisions on SLMI's behalf. (*Id.* ¶ 88). At that time, Kobayashi worked at Defendant POW!, an entity created and controlled by Lee for the purpose of receiving assets from SLMI's bankruptcy estate. (*Id.* ¶¶ 45- 49).

On May 27, 2010, the Colorado Court of Appeals recognized SLMI's new board as the duly authorized representative of SLMI, providing SLMI with a duly authorized representative that is not beholden to Lee for the first time since 1998. (*Id. passim,* ¶ 54).

**B.     Procedural History**

    **1.     Lee Commenced This Ownership Rights Case, After Which Various Shareholders Attempt To Bring Derivative Lawsuits In SLMI's Name.**

On January 8, 2007, Defendants commenced *QED Productions et al. v. James Nesfield, et al.*, Case No. 07-CV-225 (SVW) (C.D. Cal. 2007), the lead action in this consolidated litigation. In the original complaint, Defendants purported to assert, on SLMI's behalf, violations of SLMI's intellectual property rights against various shareholders. *See* Ex. 2 to Plaintiff's Request for Judicial Notice ("PRJN"), DE# 163, *Lee v. Marvel* Complaint ¶ 14. Also, starting in 2007, various shareholders attempted to bring derivative actions, some purporting to be in SLMI's name: (1) *Stan Lee Media, Inc. v. Stan Lee, et. al.*, Case No. 07-CV-4438 (SVW) (C.D. Cal. 2007) (consolidated with 07-CV-225); (2) *Jose Abadin, et. al. v. Stan Lee*, Case No. 09-CV-2340 (SVW) (C.D. Cal. 2009) (consolidated with 07-CV-225) (together with 07-CV-225 and 07-CV-4438 (the "California Actions")); (3) *Stan Lee Media, Inc. v. Marvel Entertainment, Inc., et. al.*, Case No. 07-CV-2238 (PAC) (S.D.N.Y 2007) (dismissed without prejudice because counsel unauthorized to represent SLMI); (4) *Jose Abadin, et al. v. Marvel Entertainment, Inc., et al.*, Case No. 09-CV-0715 (PAC) (S.D.N.Y. 2009) (dismissed because shareholders lacked standing to sue on behalf of SLMI)(the "S.D.N.Y. Action").

On January 20, 2009, this Court determined that (a) SLMI was not divested of

intellectual property rights by Defendants during SLMI's bankruptcy; and (b) Defendants violated the automatic bankruptcy stay by attempting to transfer various SLMI intellectual property rights to themselves while SLMI was in bankruptcy. *See* MSJ Order at 14, DE# 130. The Court also stayed further proceedings involving SLMI's ownership rights under the October 1998 Agreement pending the emergence of duly authorized representation for SLMI in the Colorado Proceedings. *See id.* at 13-14.

### 2. Judge Crotty Dismisses The First New York Derivative Lawsuit Because Putative Plaintiff's Counsel Was Not Authorized To Represent SLMI.

On September 9, 2008, Judge Crotty dismissed the first putative derivative case, 07-CV- 2238, because plaintiff's counsel was not authorized to represent SLMI. The order stated: "The current affirmation does not establish that counsel has been authorized by the corporate plaintiff to appear on its behalf. Accordingly the matter is dismissed without prejudice to its renewal should a properly constituted corporate entity decide to retain counsel and pursue whatever requests it may have." *See* Order, dated September 9, 2008, Case No. 07-cv-2238 [Docket 44], attached to Heronimus Declaration, dated March 16, 2011 ("H. Decl.") as Exh. I, DE# 159.

### 3. Judge Crotty Dismisses The Second New York Derivative Lawsuit Because Putative Derivative Plaintiffs Had No Standing.

On March 31, 2010, Judge Crotty dismissed the second putative derivative lawsuit, the "S.D.N.Y. Action," because the putative derivative plaintiffs lacked standing to sue on behalf of SLMI and noted it was "doubtful" that these plaintiffs adequately represented SLMI (the "Derivative Dismissal"). *See* Derivative Dismissal, March 31, 2010, S.D.N.Y Action, attached to H. Decl. as Exh. A, DE# 159.

### 4. The Colorado Court of Appeals Authorizes A New Board For SLMI, And This Court Lifts The Stay In The California Actions.

On May 27, 2010, the Colorado Court of Appeals reversed a lower court order and, for the first time, authorized a newly elected Board to act on SLMI's behalf. (Complaint ¶ 54). On November 8, 2010, the Colorado Court of Appeals issued its mandate confirming

the appointment of SLMI's new board. *See* PRJN Exh. 3, DE# 163. The Colorado trial court formally declared the board's election valid on January 31, 2011. *See* PRJN Exh. 4, DE# 163. Following the Colorado Court of Appeals decision, this Court heard argument on January 24, 2011 on Defendants' motion to further stay the California Actions. At the hearing, this Court summarized the triable issue of ownership before the Court, stating:

> the dispute, which has been absolutely lost in the shuffle, is whether Stan Lee had a right to breach the — not breach — but void the contract with SLMI — as he says he did — shortly before the SLMI bankruptcy or, alternatively, whether the contract between Stan Lee and SLMI was voidable at the outset and because the essential dispute is who has the copyrights to the creations of Stan Lee.

(*See* Trns. Hrg., Jan. 24, 2011 at 4:6-13 (statement of Judge Wilson), PRJN Exh. 5, DE# 163). Also, on January 24, 2011, the Court denied Defendants' stay motion and directed SLMI to file a consolidated complaint. *See* Minute Order, DE# 150. By order dated February 15, 2011, the Court consolidated the California Actions. *See* Order, DE# 153.

**5.  In 2010, SLMI Seeks To Intervene In A Closed 2002 Action By Lee Against Marvel – The "Judge Sweet Case."**

In November 2002, while SLMI was under his control and in bankruptcy, Lee sued Marvel in New York Federal Court: *Stan Lee v. Marvel Enterprises, Inc. and Marvel Characters, Inc.*, Case No. 02-CV-8945 ("*Lee v. Marvel*" or the "Judge Sweet Case"). In *Lee v. Marvel*, Lee's complaint asserted that he owned the Lee Characters and that he granted a "conditional" assignment of the Lee characters to Marvel in November 1998. *See* PRJN Exh. 2 ¶¶ 14, 39, DE# 163.

On July 14, 2010, SLMI's newly authorized Board caused SLMI to move Judge Sweet to unseal the summary judgment papers in *Lee v. Marvel*. *See* Exh. B to H. Decl., Order, dated February 4, 2011 at 1, DE# 159. On July 26, 2010, SLMI moved to intervene and re-open the case in *Lee v. Marvel*, which had been closed and confidentially

settled in 2005, and for permission to appear in the case as a claimed real party in interest re-aligned as the correct plaintiff. (*Id.* at 1). On February 4, 2011, Judge Sweet denied SLMI's motion to re-open and intervene because *Lee v. Marvel* did not involve "copyright interests" and Judge Sweet's 2005 Order granting partial summary judgment had no effect on SLMI's copyright claims. (*Id.* at 26). SLMI filed a notice of appeal of that order to protect its rights and to ensure that the Judge Sweet Case did not prejudice SLMI's copyright ownership claims in any way. On March 21, 2012, the Second Circuit, in a Summary order having no precedential effect (*See* Second Circuit Local Rule 32.1) affirmed Judge Sweet's decision not to reopen the closed case, but expressly declined to reach the issue of *res judicata,* thereby divesting Judge Sweet's decision from having any adverse effect against SLMI on its intellectual property ownership claims.

## III.   CLAIMS, ISSUES AND QUESTIONS LEFT TO BE RESOLVED

Generally, the issue to be resolved in this matter is SLMI's ownership of the intellectual property, including the Lee Characters, that Lee assigned to SLMI under the October 1998 Agreement. The question of Lee's asserted ownership, stayed by the Court in January 2009, is intertwined with SLMI's ownership claim and the competing ownership claims will be resolved in this litigation.

In its Consolidated Complaint, SLMI raised the following claims, all of which are left to be resolved:  (1)  Recovery of Personal Property;  (2)  Declaratory Relief;  (3) Breach of Contract;  (4)  Breach of Fiduciary Duty As Against Lee Only;  (5)  Breach of Fiduciary Duty As Against All Defendants;  (6)  Accounting;  (7)  Conversion;  (8) Trademark Infringement;  and (9)  Restitution of Unjust Enrichment.  DE# 152.

Among other issues raised in and by SLMI's Complaint and SLMI's Opposition to Motion to Dismiss, SLMI's ownership claims raise the following legal issues to be addressed by the Court:

- **Under California Law, Lee Has No Right To "Rescind" The Assignment of All His Intellectual Property to SLMI In The October 1998 Agreement.**

- 6 -
**SLMI'S STATUS REPORT**

The October 1998 Agreement contains an unambiguous, permanent assignment of Lee's intellectual property to SLMI, effective as of October 15, 1998. *See* October 1998 Assignment, ¶4(a), DE# 145-2. There is no contractual language providing for "rescission" or "termination" of this October 1998 assignment. *See generally* October 1998 Assignment, DE# 145-2. Moreover, SLMI's expert, Lillian Laserson, the former General Counsel of D.C. Comics, has testified by affidavit and expert report that the October 1998 assignment is consistent with industry custom and trade usage of a permanent intellectual property assignment. *See* Declaration and Expert Opinion of Lillian Laserson, dated September 10, 2010 ("Laserson Decl."), ¶¶ 29-35, DE# 146-9.

- **Any Purported Rescission Or Termination Right Lee May Have Possessed (There Was None), Is Barred By Operation Of The Bankruptcy Court's Bar Date Order.**

In April 2001, Lee (and other SLMI creditors) were served with notice that the Bankruptcy Court had issued a Bar Date Order directing creditors to file proofs of claim against SLMI by a deadline of June 8, 2001. *See* Notice of Bar Date for Filing Proof of Claims And Interests, *In re Stan Lee Media Inc.,* Case No. SV-01-11329-KL (C.D. Cal. Bkrtcy. Apr. 3, 2001) at 1-2, DE#147-1. Pursuant to that Bar Date Order, failure to assert a claim against SLMI by the Bar Date deadline of June 8, 2001 would result in the claim against SLMI being forever barred and extinguished. Lee failed to file a proof of claim at any point during SLMI's bankruptcy asserting ownership rights, damages or other relief arising from a pre-bankruptcy "rescission" of his October 1998 assignment to SLMI. Thus, as of June 9, 2001, any purported rescission or termination right Lee may have possessed against SLMI regarding the October 1998 assignment (there was none) became barred and extinguished by operation of the Bankruptcy Court's Bar Date Order.

- **Under Federal Copyright Law, Lee's Unilateral "Termination Letter" Is Legally Ineffective To Divest SLMI Of Its Copyright Ownership.**

Under 17 U.S.C. § 204 of the Federal Copyright Act, a transfer of copyright ownership is legally ineffective unless the ownership transfer is memorialized in a written instrument, executed by the copyright owner, containing language evidencing the

copyright owner's intent to transfer copyright ownership to the transferee. Lee's unilateral "termination letter," dated January 30, 2001, is not executed by SLMI - - and does not contain language evidencing SLMI's intent to transfer copyright ownership to Lee. *See* January 2001 Termination Letter, # 146-8.

- **Lee's Conduct During SLMI's Bankruptcy Demonstrates That He Permanently Assigned His Intellectual Property to SLMI.**

During SLMI's bankruptcy, Lee executed an asset purchase agreement, and obtained court approval thereof, authorizing a Stan Lee company (SLC, LLC) to purchase some of SLMI's intellectual property assets from SLMI's bankruptcy estate. *See* Asset Purchase Agreement by and between Stan Lee Media, Inc. and SLC, LLC, dated November 19, 2001, ¶ 1.1, DE# 147-6; Order Granting Motion For Order To Approve Sale of Assets Free and Clear of Liens, *In re Stan Lee Media Inc.,* Case No. SV-01-11329-KL (C.D. Cal. Bkrtcy. Apr. 11, 2002), DE# 147-5. It is not in dispute that SLMI had acquired ownership of those intellectual property assets from Lee under the October 1998 Agreement. Accordingly, by virtue of his conduct before the Bankruptcy Court, Lee confirmed the fact of SLMI's continuing ownership of the intellectual property and rights Lee previously assigned to SLMI. In addition, Lee's unilateral "termination" letter also evinces SLMI's ownership. In the last paragraph of that letter, Lee asserts that he waives any purported rights he may have to the extent necessary to facilitate SLMI's bankruptcy reorganization – again conceding that SLMI, not Lee, owns the intellectual property at issue. *See* January 2001 Termination Letter, DE# 146-8. As set forth in the expert opinion of Louise Laserson, former General counsel for DC Comics, this "waiver" did not effect a reversion of ownership of the intellectual property rights assigned to SLMI. Laserson Decl., ¶¶ 36-43, DE#146-9.

- **Section 2855 Of the California Labor Code Does Not Apply To The Assignment Of Lee's Intellectual Property Under the October 1998 Assignment.**

Section 2855 of the California Labor Code limits the duration of a "personal service" employment contract to seven years. SLMI has found no case-law in which an

intellectual property assignment between contracting parties was declared void or terminated based upon application of Section 2855 of the California Labor Code. Moreover, the cases SLMI has found indicate that Section 2855 of the California Labor Code does not even apply to Lee, because where, as here, the "employee" (Lee as SLMI's Chairman and Chief Creative Officer) exercises control of and/or managerial power over the "employer" (SLMI), then the contract is not a "personal services" contract and Section 2855 is inapplicable. *See Foxx v. Williams*, 244 Cal. App. 2d 223, 240-42 (1966) (explaining and distinguishing the case of *Ketcham v. Hall Syndicate, Inc.*, 236 N.Y.S.2d 206 (N.Y. Supr. Ct. 1963), *aff'd*, 242 N.Y.S.2d 182 (N.Y. App. Div. 1963)).

Furthermore, the October 1998 Agreement contains an express severability clause indicating that: (a) the intellectual property assignment component is severable from, and independent of, any employment obligations that may arguably be subject to Section 2855; and (b) the unenforceability of one component of the contract does not affect or render unenforceable the other components of the contract. *See* October 1998 Assignment, ¶ 6, DE# 145-2; Cal. Civ. Code § 1599; *Birbrower Montalbano, Condon & Frank v. Superior Court*, 17 Cal.4th 119, 137-40 (1998); *Keene v. Harling*, 61 Cal.2d 318, 324 (1964).

- **The 1998 Marvel Agreement Question**

In late November 1998, unbeknownst to SLMI, Lee appears to have executed an agreement with Marvel purporting to assign all of the intellectual property he possessed at that time. Exh. 2 to PRJN at 21, DE# 163. SLMI's position is that Lee did not possess any intellectual property at that time because he had previously assigned all of that property to SLMI. Specifically, in the October 1998 Agreement, Lee assigned to SLMI his intellectual property in broad and sweeping language stating that he assigned "forever…all I may have or control, now or in the future…" October 1998 Assignment, ¶ 4(a), DE# 145-2. Also, SLMI's first in-time October 1998 assignment was recorded with the U.S. Copyright Office, while Marvel's second-in-time November 1998 assignment has not been recorded. These facts provide SLMI's assignment with priority over Marvel's assignment under Section 205(d) of the Federal Copyright Act. The effect, if any, of Lee's unrecorded,

- 9 -
**SLMI'S STATUS REPORT**

second-in-time-agreement with Marvel is likewise intertwined with the ownership question presented by SLMI's claims here.

## IV. RELEVANCE OF PURPORTEDLY RELATED CASES RESOLVED IN THE SOUTHERN DISTRICT OF NEW YORK AND SECOND CIRCUIT

The following cases are now resolved in the SDNY and the Second Circuit – and SLMI provides a short analysis of their impact, if any, on this Court in this matter:

| Case Name | Resolution | Impact |
|---|---|---|
| *Lee v. Marvel*, No. 02-cv-8945 (S.D.N.Y.) | Denied reopening of closed case because did not resolve any Intellectual Property issue involving SLMI. | No Impact |
| *Lee v. Marvel*, No. 11-831 (2d Cir.) | Affirmed Judge Sweet's decision, but did not reach *res judicata* issue | No impact other than to divest Judge Sweet's decision of any purported preclusive affect on SLMI's ownership claims in this action |
| *Abadin v. Marvel*, No. 09-cv-0715 (S.D.N.Y.) | Dismissed putative derivative action because shareholders lacked standing to assert claims on behalf of SLMI. | No impact, but Defendants' *res judicata* argument is still pending before this Court (*See* SLMI Opp. at 14-21 (demonstrating *no res judicata* effect as to SLMI)) |

## V. CONCLUSION

Based upon the record, the procedural history and SLMI's Consolidated Complaint, SLMI respectfully requests that the Court should proceed to decide the fully-briefed Motion to Dismiss; deny that motion for the reasons stated in SLMI's Opposition; and permit SLMI to pursue discovery in this matter.

Dated: April 6, 2012
    **KOHN LAW GROUP, INC.**
    **DUNNINGTON, BARTHOLOW & MILLER, LLP**

    By: /s/ Robert E. Kohn
        Robert E. Kohn
        Counsel for Plaintiff STAN LEE MEDIA, INC., a Colorado corporation