UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| STAN LEE MEDIA INC., ET AL., | ) | CASE 2:07-cv-00225-SVW-SSx |
| Plaintiffs, | ) | ORDER GRANTING DEFENDANTS' |
| v. | ) | MOTION TO DISMISS [158] |
| STAN LEE, ET AL., | ) | JS-6 |
| Defendants. | ) | |

## I. INTRODUCTION

The instant action is one of several cases involving a dispute over intellectual property rights in certain characters created by Stan Lee, a renowned creator of comic-book characters. This dispute has resulted in a decade-long flood of litigation in this Court, the United States Bankruptcy Court in this district, the Southern District of New York, the United States Court of Appeals for the Second Circuit as well as in several state courts in Colorado.

## II. FACTUAL BACKGROUND

Stan Lee was employed for more than four decades by Marvel and its predecessors. During his tenure with Marvel, Lee created or co-created

hundreds of characters including iconic characters such as Spider-Man, Iron Man, the Fantastic Four and the X-Men.

On October 13, 1998, Lee formed Stan Lee Entertainment, Inc., the predecessor to Plaintiff Stan Lee Media Inc. ("SLMI"), with his associate Peter Paul. On October 15, 1998, Lee entered into an agreement (the "SLMI Employment Agreement") with SLMI[1] which provided that Lee would serve as Chairman and Creative Officer of SLMI for life in return for a salary, stock options and other compensation. Pursuant to the SLMI Employment Agreement, Lee also agreed to "assign, convey and grant to [SLMI] forever, all right, title and interest I may have or control, now or in the future" in certain copyrights and trademarks. SLMI alleges that by signing the SLMI Employment Agreement, Lee assigned all copyrights and trademarks associated with all characters and comic books that he authored, including the iconic characters that he created during his tenure at Marvel. SLMI alleges that, in November 1998, Lee entered into an agreement with Marvel pursuant to which he purported to grant Marvel the same intellectual property rights that he had assigned to SLMI one month earlier. Stan Lee does not deny the assignment to Marvel, but contends that, *inter alia*, the copyrights that he assigned to Marvel were not those that he assigned to SLMI.

**III. LITIGATION HISTORY**

    **A.    Litigation in this Court**

On February 14, 2011, SLMI filed a Consolidated Complaint, superseding the previous complaints in the case. (Dkt. No. 152).[2]

---

[1] The Court will refer to Stan Lee Entertainment, Inc. and SLMI simply as SLMI in the interest of clarity.

[2] The consolidated case is styled Stan Lee Media, Inc. v. Stan Lee et al., CV 07-225 SVW (SSx). It consolidated the following cases: (1)

Although it contains nine causes of action, SLMI's Consolidated Complaint essentially alleges that, in October 1998, Lee assigned to SLMI certain copyrights and trademarks via the SLMI Employment Agreement, which he then unlawfully reassigned to Marvel one month later in November 1998. (Id. ¶¶ 31-35).

   **B.   Litigation in the Southern District of New York: Abadin I**

On January 26, 2009, a derivative action was filed on behalf of SLMI against several parties, including Stan Lee, the principal Defendant in the instant action. Abadin v. Marvel Entertainment, Inc., CV 09-0715 (PAC), 2010 WL 1257519 (S.D.N.Y. March 31, 2010) (hereinafter, "Abadin I"). The derivative plaintiffs included José Abadin, currently SLMI's President, Chairman, and Chairman of the Special Litigation Committee. The complaint alleged essentially the same claims that are before this Court. On March 31, 2010, the court in Abadin I dismissed the derivative plaintiffs' First Amended Complaint with prejudice.

The court in Abadin I held that the derivative plaintiffs failed the contemporaneous-ownership standing requirement under Fed. R. Civ. P. 23.1, which requires that a derivative plaintiff own shares at the time of the transaction complained of. Id. at *5; see Fed. R. Civ. P. 23.1(b)(1).[3] The court proceeded, however, to reject the plaintiffs'

---

QED Productions v. Nesfield, CV 07-225 SVW (Ssx) ("QED"), filed on January 9, 2007; (2) Stan Lee Media, Inc. v. Stan Lee, CV 07-4438 SVW (Ssx) ("SLMI"), filed on July 9, 2007; and (3) Abadin, derivatively on behalf of SLMI v. Stan Lee, CV 09-2340 SVW (PJWx) ("Abadin II"), filed on April 3, 2009.

[3] In its supplemental briefing, SLMI argues that, under Rule 23.1(c), all SLMI shareholders should have received notice of the dismissal of Abadin I. Putting aside the fact that SLMI arguably waived this argument by not raising in its Opposition to Defendants' Motion to

1  claims on the merits - primarily on the basis of the applicable statute
2  of limitations.[4]

3  **IV. DISCUSSION**

4   *Res judicata* bars lawsuits based on "'any claims that were raised
5  *or could have been raised*' in a prior action." Stewart v. U.S.
6  Bancorp, 297 F.3d 953, 956 (9th Cir. 2002) (quoting Owens v. Kaiser
7  Found. Health Plan, Inc., 244 F.3d 708, 713 (9th Cir. 2001)).

---

Dismiss, SLMI's argument is unavailing given that the plain language of Rule 23.1(c) requires that notice be given to all shareholders only if the dismissal at issue is *voluntary*. See Fed. R. Civ. P. 23.1(c). The dismissal in Abadin I was not voluntary. Rather, as noted above, the court found that the Abadin I plaintiffs lacked statutory standing under Rule 23.1's contemporaneous ownership requirement before addressing the claims on the merits.

[4]  SLMI filed a motion to intervene in a related case in the Southern District of New York, Lee v. Marvel Enters., Inc., 765 F.Supp.2d 440 (S.D.N.Y. 2011) (hereinafter "Marvel"). The parties eventually reached a settlement, and, on April 27, 2005, the court in Marvel issued an order dismissing all claims with prejudice. Id. at 444. More than five years later, SLMI filed a motion to vacate that 2005 order and to file a proposed amended complaint against Lee and other defendants asserting claims essentially identical to those before this Court and in Abadin I. On February 4, 2011, the court in Marvel denied SLMI's motion on multiple grounds. Id. at 453-55.
The court in Marvel also held that SLMI's proposed amended complaint was barred by Abadin I under the doctrine of *res judicata*. SLMI appealed that decision and this Court stayed the instant action, noting that, "[s]hould the Second Circuit reverse Marvel or affirm it without addressing the *res judicata* determination, [the opinion in Marvel] will have no *collateral estoppel* effect." (Dkt. No. 183) (citing Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, 18 Federal Practice & Procedure § 4421 at 570 (2d ed. 2002) ("The federal decisions agree with the Restatement view that once an appellate court has affirmed on one ground and passed over another, preclusion does not attach to the ground omitted from its decision.") (citing cases)). On March 21, 2012, the Second Circuit affirmed the court in Marvel in a Summary Order, but expressly declined to reach the issue of *res judicata*. Lee v. Marvel, No. 11-831-cv, 2012 WL 934016, at *2 (2d Cir. Mar. 21, 2012). Accordingly, the Court addresses the issue of *res judicata* in this Order.

4

"The doctrine of res judicata serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case. There is simply 'no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of res judicata.'" <u>Federated Dept. Stores, Inc. v. Moitie</u>, 452 U.S. 394, 401 (1981) (quoting <u>Heiser v. Woodruff</u>, 327 U.S. 726, 733 (1946)). *Res judicata* applies to bar a suit where there is "(1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties." <u>Stewart</u>, 297 F.3d at 956 (internal citation omitted).

    **A.   Identity of Claims**

Four criteria, which are not applied mechanistically, determine whether there is an identity of claims: "(1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions." <u>Mpoyo v. Litton Electro-Optical Sys.</u>, 430 F.3d 985, 987 (9th Cir. 2005). Moreover, "[n]ewly articulated claims based on the same nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action." <u>Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg. Planning Agency</u>, 322 F.3d 1064, 1078 (9th Cir. 2003).

Identity of claims exists here. First, the relevant "transactional nucleus of facts" undergirding the instant litigation and <u>Abadin I</u> are the same: both cases concern Lee's respective

agreements with SLMI and Marvel, and whether Lee transferred to Marvel any of the same intellectual property rights as he previously assigned to SLMI. These facts arose literally from the same transactions.

For the same reason, the fourth criterion is also satisfied. SLMI does not suggest in its briefing that any new evidence exists which would give rise to claims that could not have been brought in Abadin I. This is unsurprising given that the relevant evidence in both Abadin I and this case comprises Lee's dealings with SLMI and Marvel over a decade ago. Accordingly, "substantially the same evidence" is at issue in both cases. Mpoyo, 430 F.3d at 987.

The second and third factors also militate in favor of Lee. Notably, the complaints from Abadin I and this case both allege substantially the same claims against Lee for breach of contract, breach of fiduciary duty, declaratory relief, trademark infringement, and unjust enrichment. Therefore, by winning dismissal in Abadin I, Lee won the "interest" in defeating those claims. By permitting this litigation to continue, the Court would impair that interest.

At bottom, this case and Abadin I contain the same claims, arise out of the same transactional nucleus of facts, and involve substantially the same relevant evidence.[5] All of the allegations in the present complaint were asserted in Abadin I or, at a minimum, could have been asserted. Accordingly, the Court concludes that this *res judicata* factor is satisfied.

---

[5] Defendants provide Exhibit X to the Declaration of Marcy M. Heronimus in Support of Defendants' Motion to Dismiss, which is a chart comparing the claims in the First Amended Complaint in Abadin I, the proposed amended complaint that the court in Marvel rejected, and SLMI's Consolidated Complaint in the instant action. Exhibit X clearly demonstrates the striking similarity of the claims in Abadin I and the claims at issue here.

### B. Final Judgment on the Merits

SLMI contends that there was no final judgment on the merits in Abadin I because the plaintiffs in that case were found not to have standing pursuant to Fed. R. Civ. P. 23.1(a). SLMI argues that any additional findings in Abadin I as to the merits have no effect because the court determined that the derivative plaintiffs lack standing.

SLMI conflates statutory standing with constitutional standing. When a plaintiff lacks constitutional standing because there is no "case or controversy," a court lacks subject matter jurisdiction to hear the case and thus cannot rule on the merits. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) (internal citation omitted) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").

However, a determination that a plaintiff lacks statutory standing (in this case, standing under Rule 23.1) is not constitutional in dimension and does not divest a court of subject matter jurisdiction. In re Digimarc Corp. Derivative Litig., 549 F.3d 1223, 1237 (9th Cir. 2008) ("Federal Rule of Civil Procedure 23.1's pleading requirement does not directly implicate subject matter jurisdiction . . . ."); LeBoyer v. Greenspan, No. 03-5603, 2007 WL 4287645, at *3 (C.D. Cal. May 24, 2007) (noting that the "shareholder derivative standing requirements of Federal Rule of Civil Procedure 23.1 involve prudential limitations, not constitutional limitations") (quoting First Hartford Corp. Pension Plan & Trust v. United States, 194 F.3d 1279, 1290 (Fed. Cir. 1999)).

1  The court in Abadin I addressed all of plaintiffs' claims on the
2 merits and denied them with prejudice, primarily on statute of
3 limitations grounds. Dismissals on statute of limitation grounds are
4 judgments on the merits and are given *res judicata* effect. Tahoe-
5 Sierra, 322 F.3d at 1081 (citing Plaut v. Spendthrift Farm, Inc., 514
6 U.S. 211, 228 (1995)). "[W]here a decision rests on two or more
7 grounds, none can be relegated to the category of obiter dictum."
8 Woods v. Interstate Realty Co., 337 U.S. 535, 537 (1949). Accordingly,
9 the Court concludes that Abadin I was a final judgment on the merits.

     **C. Identity or Privity Between Parties**

11  Privity "is a legal conclusion designating a person so identified
12 in interest with a party to former litigation that he represents
13 precisely the same right in respect to the subject matter involved."
14 F.T.C. v. Garvey, 383 F.3d 891, 897 (9th Cir. 2004) (internal quotation
15 marks omitted). "Privity is a flexible concept dependent on the
16 particular relationship between the parties in each individual set of
17 cases." Id. (internal quotation marks omitted). At its core, "privity
18 exists between two parties who adequately represent the same legal
19 interests." Va. Sur. Co. v. Northrop Grumman Corp., 144 F.3d 1243, 1247
20 (9th Cir. 1998) (internal citation omitted); see also Headwaters Inc.
21 v. U.S. Forest Serv., 399 F.3d 1047, 1054 (9th Cir. 2005) ("[I]dentity
22 of interests and adequate representation are necessary to such a
23 finding [of privity]."). "It is the identity of interest that controls
24 in determining privity, not the nominal identity of the parties." Va.
25 Sur. Co., 144 F.3d at 1247.

     **1. Identity of Interests Between Abadin I Plaintiffs and SLMI**

In Headwaters, the Ninth Circuit enumerated the relationship between "corporations and their officers or shareholders" as a traditional example of "a limited number of legal relationships in which two parties have identical or transferred rights with respect to a particular legal interest." 399 F.3d at 1053. As the Court of Appeals has explained, "[e]ven when the parties are not identical, privity may exist if there is substantial identity between parties, that is, when there is sufficient commonality of interest." Tahoe-Sierra, 322 F.3d at 1081 (quoting In re Gottheiner, 703 F.2d 1136, 1140 (9th Cir. 1983)). The Ninth Circuit recently has affirmed this principle, stating that "in certain limited circumstances, a nonparty may be bound by a judgment because she was adequately represented by someone with the same interests who [wa]s a party to the suit." Harris v. County of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012) (quoting Taylor v. Sturgell, 553 U.S. 880, 894 (2008)) (internal quotation marks omitted). For example, in In re Gottheiner, the Court of Appeals held that "when a person owns most or all of the shares in a corporation and controls the affairs of the corporation, it is presumed that in any litigation involving that corporation the individual has sufficient commonality of interest." 703 F.2d at 1140.

Here, SLMI and the derivative plaintiffs in Abadin I are in privity. As an initial observation, SLMI and the Abadin I plaintiffs embody the traditional concept of corporation-officer privity described in Headwaters. Moreover, as in In re Gottheiner, the lead plaintiffs in Abadin I direct the affairs of SLMI. Two of the lead plaintiffs in Abadin I constituted the majority of SLMI's three-member board of

directors during the pendency of this action.[6] Abadin, who was lead plaintiff in Abadin I, now serves as SLMI's President, Chairman, and Chairman of the Special Litigation Committee. With this control, these former plaintiffs now seek to pursue in this lawsuit precisely the same rights that they sought to vindicate on behalf of SLMI in Abadin I: the valuable intellectual property rights that allegedly were unlawfully transferred to Marvel.[7] Given the overlapping economic interests between the Abadin I plaintiffs and SLMI, the Court concludes that the two parties share sufficient commonality of interests to support privity.

This determination comports with the views of other federal courts, which similarly have held that "[a] judgment in the stockholders' derivative action is *res judicata* both as to the corporation and as to all of its stockholders." Henik ex rel. LaBranche & Co. v. LaBranche, 433 F.Supp.2d 372, 380 (S.D.N.Y. 2006) (quoting Ratner v. Paramount Pictures, Inc., 6 F.R.D. 618, 619 (S.D.N.Y. 1942)). The Court is mindful, however, that "a finding of privity between a shareholder and the corporation depends on whether, under the circumstances, the interests of the nonparty were adequately represented." Amalgamated Sugar Co. v. NL Indus., Inc., 825 F.2d 634, 640 (2d Cir. 1987). For the reasons discussed below, the Court

---

[6] The fact that one of those plaintiffs, Nelson Thall, was not named as a plaintiff in Consolidated Complaint is inconsequential. See Garvey, 383 F.3d at 891.

[7] Abadin and his associates had filed a similar suit two years earlier in the Southern District of New York in which they attempted to act directly on SLMI's behalf. See Stan Lee Media, Inc. v. Marvel Entertainment Inc., 07-CV-2238 (S.D.N.Y.). That case was dismissed without prejudice because SLMI did not have a properly constituted board that could authorize counsel to represent SLMI at that time.

concludes that SLMI's interests were adequately represented by the Abadin I plaintiffs.

### 2. Adequate Representation[8]

"A party's representation of a nonparty is 'adequate' for preclusion purposes only if, at a minimum: (1) the interests of the nonparty and [the] representative are aligned; and (2) either the party understood [itself] to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." Harris, 682 F.3d at 1132-33 (quoting Taylor, 553 U.S. at 900) (internal quotation marks omitted). For example, in Headwaters, the Ninth Circuit reversed the district court's determination that the nonparty was adequately represented by earlier plaintiffs where the record contained no indication (1) that the nonparty was given notice of the prior litigation; (2) that the prior litigation, which was not brought as a class action, was structured so as to protect the nonparty's interests; or (3) that the plaintiffs in the earlier suit thought they were representing anyone but themselves. 399 F.3d at 1055-56. For these reasons, the court concluded that "the district court could not determine, *sua sponte* and with no factual record, that the [prior] plaintiffs were adequately representing [the nonparty]." Id. Further, the court noted that the public interest underlying *res judicata* was not strong because no judicial resources had been spent resolving the merits of the dispute. Id. at 1057.

Here, by contrast, Abadin I was brought as a derivative suit. Therefore, it is plain that Abadin I plaintiffs were aware that they

---

[8] As Defendants note, SLMI's claim that this Court held in its January 20, 2009 Order that SLMI was inadequately represented for purposes of *res judicata* analysis is inaccurate.

11

were representing the interests of the corporation, SLMI. <u>Harris</u>, 682 F.3d at 1133. And unlike <u>Headwaters</u>, the district court here recognized <u>Abadin I</u> as a derivative suit subject to the safeguards under Fed. R. Civ. P. 23.1. See <u>Abadin I</u>, 2010 WL 1257519 at *1, 5 n.4. Moreover, as already discussed above, the economic interests of the <u>Abadin I</u> plaintiffs and SLMI are aligned in that they both have sought to restore the intellectual property rights that Lee sold to Marvel. Therefore, the requirements of adequate representation are met in this case.

The Court is cognizant that in <u>Abadin I</u>, the district court in a footnote made an observation - not a finding - that "[i]t is doubtful whether the two named Plaintiffs can be said to 'fairly and adequately represent the interests of' absent shareholders, as required by Fed. R. Civ. P. 23.1(a)" on account of their association with Peter Paul, a felon convicted of securities fraud for manipulating SLMI's stock. <u>Abadin I</u>, at *5 n.4.

Nonetheless, this passing speculation does not warrant a different outcome. As an initial matter, the mere suspicion that the lead plaintiffs in <u>Abadin I</u> might not have adequately represented the other shareholders says nothing of whether they adequately represented the *corporation*, SLMI. More importantly, the "doubts" expressed by the court in <u>Abadin I</u> stem from Paul's conviction for securities fraud. Paul's conviction was based on his admitted manipulation of SLMI's stock, not from any interference with, or conflicting interest in, SLMI's asserted interest in the intellectual property at issue in this case and in <u>Abadin I</u>. In other words, notwithstanding Paul's conviction, there is no reason to doubt that Paul, the <u>Abadin I</u>

plaintiffs, and SLMI all shared a joint interest in protecting the intellectual property at issue. Nor is there any allegation that Paul's criminal activity in any way impaired the plaintiffs in <u>Abadin I</u> or SLMI, the Plaintiff in this action, from actively litigating either matter.

Next, SLMI argues that the <u>Abadin I</u> plaintiffs were inadequate representatives because of the manner in which their counsel responded to defendants' motions to dismiss their First Amended Complaint. Rather than file a formal Opposition to the pending motions to dismiss, on September 8, 2009, counsel for the <u>Abadin</u> plaintiffs sent a letter to the district court (pursuant to local practice) in which counsel informed the court that the <u>Abadin</u> plaintiffs intended to file a Second Amended Complaint that "responds to the supposed deficiencies in the Amended Complaint that defendants raise in their motions to dismiss, *and thus renders those motions moot*." (Matesky Decl., Ex. U) (emphasis added). The September 8, 2009 letter is substantive in nature. It addresses the arguments made in the defendants' then-pending motions to dismiss in a series of paragraph-length bullet points, which include multiple citations to legal authority, and explains how the proposed Second Amended Complaint thoroughly disposes of those arguments. The letter closes by asking the court to treat the letter along with the proposed Second Amended Complaint as plaintiffs' response to the pending Motions to Dismiss, which the court ultimately did. (<u>Id.</u>). While the court in <u>Abadin I</u> found the plaintiffs' arguments unpersuasive, there is nothing in this practice from which this Court could conclude that SLMI was inadequately represented.

13

1    Indeed, SLMI's argument is foreclosed by Owens, 244 F.3d at 708.
2 In Owens, the Ninth Circuit rejected the appellants' contention that
3 *res judicata* should not bar their claims where the (1) prior litigation
4 was dismissed for failure to prosecute; and (2) appellants' counsel
5 failed to oppose a motion to dismiss.  Id. at 714.  SLMI essentially
6 contends that it was not adequately represented because the derivative
7 plaintiffs in Abadin I did not present factual arguments that SLMI
8 contends should have been presented.  (Dkt. No. 201 at 6-7).  But if
9 the complete failure to file an opposition does not bar the application
10 of *res judicata*, as in Owens, then *a fortiori* the failure to make
11 certain arguments in an opposition could not pose an obstacle to *res*
12 *judicata*.  See Owens, 244 F.3d at 714 ("The Supreme Court has made
13 clear . . . that there is 'no principle of law or equity which
14 sanctions the rejection by a federal court of the salutary principle of
15 res judicata.'  Accordingly, we reject Appellants' contention that
16 equitable principles preclude application of res judicata in this
17 case.") (citing Federated Dep't Stores, 452 U.S. at 401).
18    The Court further agrees with Defendants that the cases cited by
19 SLMI in support of its argument that it was inadequately represented in
20 Abadin I are all readily distinguishable from the instant action.  (See
21 Dkt. No. 203 at 6-9).  For example, in Hansberry v. Lee, 311 U.S. 32
22 (1940), the Supreme Court held that plaintiffs who sought to challenge
23 racially discriminatory restrictive covenants were not bound by a prior
24 class-action litigated by homeowners who *supported* the covenants.
25 There is no conflict of interest here, let alone one as blatant as in
26 Hansberry.  Pelt v. Utah, 539 F.3d 1271 (10th Cir. 2008), also cited by
27 SLMI, actually strengthens the Court's conclusion.  While the court in
28

Pelt found that the plaintiffs were not adequately represented in two prior actions, it did so because the named plaintiffs and class counsel in the prior actions effectively abandoned seemingly viable claims after seventeen years of litigation. Id. at 1287-89. In reaching its conclusion, the Pelt court noted the "unique factual situation" of the case before it, expressly recognized "the importance of finality of judgments," and did not read "the adequacy of representation inquiry as requiring second-guessing of every litigation decision." Id. at 1289. The Court declines SLMI's invitation to engage in precisely this sort of second-guessing. Finally, SLMI's reliance on In re Palmer, 207 F.3d 566, 568 (9th Cir. 2000), which concerns the "actually litigated" prong of the collateral estoppel doctrine, not the privity prong of *res judicata*, is equally misplaced. Accordingly, the Court concludes that SLMI was adequately represented in Abadin I.

Last, unlike in Headwaters, the public interest in *res judicata* is at its zenith in this case. As the district court in New York observed, this litigation has consumed vast judicial resources. See Abadin I, 2010 WL 1257519 at *4 ("Given the pleading history here in this District, the Colorado State Court proceedings, the three companion actions in the Central District of California, the class action suit and settlement, and a 5 year bankruptcy case, it is now time to call a halt."). Since Abadin I, the related Marvel litigation has continued in the Southern District of New York and the Second Circuit. Further, unlike Headwaters, where no judicial resources had been spent on the merits of the claims, the Abadin I court dismissed each of the eight claims for relief in the complaint on grounds specific to each claim, including the statute of limitations. The

Court therefore concludes that there is a compelling public interest in bringing this matter to a close.

**V. CONCLUSION**

Defendants' Motion to Dismiss is GRANTED for the reasons set forth in this Order.

IT IS SO ORDERED.

DATED:     August 23, 2012

STEPHEN V. WILSON

UNITED STATES DISTRICT JUDGE